SWIFT et al *vs.* STEBBINS and HUNTER.

1. All orders and entries, made in the regular progress of a cause in term time, are to be received as emanating from the Court: and a record is conclusive evidence of all it contains.
2. Thus, where an entry in the record, in a Chancery cause, showed an order of publication in reference to non-resident defendants, which was followed by an entry, that the said order was, according to its tenor and effect, published in a paper, &c. (naming it,)—held, that this Court would presume that proof of publication had regularly been made.
3. And *it seems*, that proof of publication in a Chancery cause, may be made, by calling the printer into Court, and producing the paper.
4. The rule, that all persons in interest, must be made parties to a Chancery suit, does not apply to the case of creditors for whose use a mortgage deed of lands is executed; and where the trustee seeks to foreclose.
5. Thus, where a mortgage deed of lands, has been executed to a trustee, to secure the payment of debts to sundry persons, the trustee may maintain a suit in Chancery to foreclose, without the *cestui que trusts'* being made parties.

In error on a decree in Chancery of the Circuit Court of Mobile.

Russel Stebbins and John Hunter, as trustees, filed a bill in Chancery, which set forth the following facts :—On or about the 23d day of February, A. D. 1828, John S. Bourne, then a citizen of the County of Mobile, but since deceased, together with Mary Ann Bourne and Ann Mary Bourne, of the city of New York, were seized, or pretended to be seized, of a certain parcel of land, lying in the city of Mobile. That, on or about that day, one Samuel G. Swift, together with the said John S. Bourne, executed their joint and several promissory note, payable to said Stebbins and Hunter, for the sum of six thou-

sand dollars, to be due at twelve months: this note, as charged in the bill, was executed to the said Stebbins and Hunter, as trustees for sundry mercantile firms of the city of New York, and to secure a debt due by the said Swift to the said firms. Afterwards the said John S. Bourne, and Mary Ann Bourne and Ann Mary Bourne, by their attorney in fact, the said Swift, in order the better to secure the payment of the said sum of money, specified in the said promissory note, executed a certain indenture of mortgage, of the said parcel of land above mentioned as situate in the city of Mobile, unto the said Stebbins and Hunter, as trustees for the before mentioned firms in the city of New-York; and which said indenture of mortgage, was to be void on condition, that the said sum of money in the said promissory note mentioned, was duly paid, &c. At the same time, Swift executed an assignment of two indentures of mortgage to secure the said debt.

On the first day of November, 1828, John S. Bourne died intestate, leaving Mary Ann Bourne and Ann Mary Bourne, together with a brother, the only legal heirs.

The bill, after alleging a failure to pay the amount of money specified in the said promissory note, prayed a foreclosure of the equity of redemption, and a sale of the premises, to satisfy the debt, &c.

Upon this bill, subpœnas were issued on the 15th day of November, 1831, which were returned as executed upon Swift, and "not found," as to the other defendants. Afterwards, at Fall Term, 1831, of the Court, the following entry was had in the cause:—
." Came the complainants, by their attorneys, and, it

SWIFT et al. *vs.* STEBBINS and HUNTER.

appearing to the satisfaction of the Court, that Mary Ann Bourne, Ann Mary Bourne and Ezra Bourne reside without the jurisdiction of this Court—it is ordered that publication be made once a week, for six weeks, in the "Mobile Commercial Register," that the said Mary Ann Bourne, Ann Mary Bourne and Ezra Bourne, appear at the next term of this Court, on the fourth Monday after the fourth Monday of March next, and plead, answer or demur to the complainant's bill; or the same will be taken *pro confesso* and heard *ex parte*," &c. Then followed this entry, to wit—" Which said order was, according to the tenor and effect thereof, published in the 'Mobile Commercial Register.' "

At the Spring term, 1832, of the Court, the defendants filed a general demurrer to the bill; and insisted, in support thereof, that there were not proper parties to the bill; which demurrer was overruled, and a judgment taken *pro confesso*, and the cause set for hearing *ex parte*. A decree was then made, which, after reciting, that upon an examination of the report of the master, to whom the matter had been referred, it appeared that the said sum of money, as charged in the bill, was yet due, &c.—therefore, ordered, that a sale of the premises mentioned in the bill, be made, &c., and applied to the said debt, &c.

The defendants upon this decree, took a writ of error, and removed the cause into this Court.

*Gordon* for the plaintiff in error—*Stewart*, contra.

TAYLOR, J.—Two objections are made to the proceedings in the Circuit Court—

4 s & p.                                    57

1st. That the decree was rendered against the defendants without their having been made parties.

2d. That those holding the equitable interest in the mortgaged premises, should have been joined with the trustees as complainants.

It appears from the record, that it was proved to the Court below, that some of the persons who were prayed to be made defendants by the bill, were non-residents; whereupon publication was ordered by the Court, according to the statute, requiring them to appear at the next term, &c. Immediately succeeding this order, is the following entry—"which said order was, according to the tenor and effect thereof, published in the Mobile Commercial Register." The order was, that it should be published in that paper for six weeks.

It is contended by the counsel for the plaintiff in error, that it does not appear in what manner, nor at what time this entry was made, nor that any proof was introduced to authorise it.

All the orders and entries made in the regular progress of a cause, during term time, must be received as emanating from the Court: the clerk is only the instrument employed to place the orders, judgments, &c., of the Court, upon the record. The entry succeeding the order of publication, is therefore to be considered as much the act of the Court, as if the judge himself had made it. Viewing it in this light, it carries within it clear evidence, that proof of publication was regularly made.

The record is conclusive evidence of every thing it contains; and as the fact of publication could not have appeared but by proof, we must presume, that

SWIFT, et al. *vs.* STEBBINS and HUNTER.

it did so appear.   Although the testimony relating to the merits of a suit in chancery, should regularly appear by deposition, yet there can be no necessity for adopting this mode, to prove every incidental and isolated fact, which must be shown during the progress of a cause ; and it has been the uniform practice for the printer to be called into Court with his paper, to satisfy the Court that the publication had been regularly made.

All the persons against whom the decree was rendered, were, therefore, regularly made defendants.

The second objection is the one upon which the plaintiffs in error mainly rely.

It is laid down by them to be an unvarying proposition, that all the parties in interest, must be made parties to a suit in chancery.   This proposition, it is believed, can not be sustained.   A part of the creditors often file a bill against the representative of an insolvent deceased, for distribution of the estate, according to chancery rules; and in such case it is not necessary that all the creditors should be complainants; but those who are such, may pray the relief in behalf of themselves and the other creditors; and it will be referred to the master to determine who are creditors.   Nor is this the only case in which a part of those interested may sue for the benefit of themselves and others.

In the case of *Joy, et al.* vs. *Wirtz,*[a] the bill was filed by the complainants, to set aside a deed of release, made by them and others, creditors to the defendants, their debtors and bankrupts.

Judge *Washington,* in his opinion in that case, said—" the object of this bill, is to set aside this re-

[a] 1 Wash. Cir. Court Rep. 517.

lease, which affected all the creditors equally, and in which they all united. The Court can not set it aside in respect of part of the creditors, and leave it to operate against the others; nor can we set it aside as to all, unless all were parties, either by name, or as being represented by a part, suing in the names of all."

Many other cases might be cited to show, that there are instances in which all persons who are to be affected by the decree, need not be actual parties, *complainants,* but some may be represented by others.

There is no doubt, that all persons sought to be charged by the bill, must be parties defendants, but necessity or convenience may have required the adoption of the principle, that when the persons are numerous, who are to be benefitted by a decree, a part may represent the whole ; as is the daily practice in seeking to marshall assets in chancery.

As respects the general doctrine of who must of necessity be parties, Judge *Washington* declares, in the case above cited, when it was before the Court a second time,[a] "if the decree can be made without affecting the rights of a person not made a party, or without his having any thing to perform necessary to the perfection of the decree; reason, as well as adjudged cases, will warrant the Court in proceeding without him, if he be not amenable to the process of the Court, or no beneficial purpose is to be effected by making him a party."

It is true, that the opinion just referred to, relates to defendants, but it is believed, that the rule requiring all parties in interest, to be made parties to the

[a] 1 Cir. Co. Rep, 517.

SWIFT, et al. *vs.* STEBBINS and HUNTER.

suit, is at least as unbending in reference to defendants, as complainants.    Then let us apply this reasoning to the present case.    It is certain, that the persons having the beneficial interest in the mortgage, can "have nothing to perform, necessary to the perfection of the decree."    Every thing to give full effect to the mortgage is necessary to be done by those who are now parties to the suit.    The mortgage was intended to give effect to the trust; the trust can not be executed, that is, a sale of the mortgaged premises can not be made, without a foreclosure.    It can not be denied but the defendants might show, in their defence, that they had discharged the debts intended to be secured by the trust, by direct payments to the *cestui que trusts;* but it will be time enough to inquire whether the trustees alone can contest such payments, when they are averred to have been made by answer.    If such averment were made, and it should be necessary then to make the creditors parties, it could be done by amendment.    It is not, however, intended to intimate the opinion, that it would be necessary.

In the case of *Hitchcock* vs. *Scribner*,[a] Judge *Kent* remarked, "it is a principle well settled, that all persons, materially interested in the subject, ought to be parties to the suit, so that a complete decree may be made.

"The object of this rule is to make the performance of the order of the Court perfectly safe to those who are compelled to obey it, and to prevent future litigation.    And it is a general rule, that every person is to be adjudged a party in interest, against

[a] 3 Johns. Cases 311.

whom, if the cause be brought to a hearing, the plaintiff can have a decree."

Certainly "a complete decree" of foreclosure can be made in this case, without the addition of other parties; and "the performance of the order of the Court:" any order which could be made upon a final decree, "would be perfectly safe to those who are compelled to obey it, and future litigation" can not take place.

The case cited by the counsel for the plaintiff in error, of *Johnson* vs. *Rankin*,[a] is not believed to be at all analagous to this. There, land had been sold by Johnson to Henderson, by Henderson to Wallace, and by Wallace to Rankin, without any conveyance, further than a bond for a title, having been made to any of the vendees. Rankin filed his bill against Johnson to compel him to make a title, omitting both the intermediate vendors. The Court very correctly determined, that they should have been parties : and the reason is obvious. They might have denied that Rankin had any right to the title: by showing either that the purchase money had not been paid to them, and that they still had a lein upon the land for it, or on many other accounts. The interest of Henderson and Wallace would have been directly affected by the decree, in that case, and notwithstanding any decree which might have been made, they could have asserted their rights, in a subsequent suit, so that future litigation would not have been prevented.

The case most in point, which has been cited by plaintiff in error, is that of *Malin* vs. *Malin and others*.[b] The bill stated, that a religious society was formed, denominated the society of friends, of which

[a] 2 Bibb 184

[b] 2 Johns. Ch. R. 238

Jemima Wilkinson was the founder and head. That for the support of Jemima and the poor of the society, she purchased certain lands and paid for them, and that as a rule of the society forbade any estate being vested in her, she nominated one of her followers, Sarah Richards, by name, to be her trustee, and the deed was taken in the name of the said Sarah, without any expression of the trust in the deed. That Sarah Richards devised the lands to the plaintiff and died, having devised other property to her daughter Eliza. That the said Eliza afterwards left the society and married the defendant, and that the defendants, Eliza and her husband, on account of some alleged defect in the devise, entered upon and claimed the land as their own.

The Chancellor (*Kent*,) determined, that "as Jemima Wilkinson is the *cestui que trust* of the lands in question, from the showing in the bill, and the present plaintiff is but a mere nominal trustee, it is indispensable that she should be made a party, to entitle her to relief."

It is obvious, that the whole interest of the *cestui qui trust* in the lands, was the matter in controversy, in this case. The trustee did not seek by her bill, merely to execute a naked power, under an authority derived directly from the defendant, to enable her to execute her trust, but sought relief by a suit in which the title of the trustee and the defendants was to be the matter of contest, and therefore to secure the honest prosecution of her rights, and afford her that redress to which she was entitled, it was necessary, that she should be made a party, lest her interest should be compromitted by others. And this

was the more necessary, as the trustee had not been directly appointed by her, but by the will of the first trustee.

The trustees selected by the parties, can certainly as well represent the interest of the creditors for whom they act, as a part of the creditors could that of the rest.

This reasonable doctrine is fully sustained by *Mitford,* in his Treatise on Chancery Pleading, (page 142.) He says, "trustees of a real estate for payment of debts or legacies, may sustain a suit, either as plaintiffs or defendants, without bringing before the Court, the creditors or legatees for whom they are trustees, which in many cases would be almost impossible; and the rights of the creditors or legatees would be bound by the decision of the Court against the trustees."

As the object of the bill is simply to enable the trustees to execute the trust confided to them, and no act can be required to be done by the creditors; the demurrer is believed to have been properly overruled.

The decree must be affirmed.