## CAREY ET AL. *v.* BROWN.

1. Where a suit, brought by a trustee to recover trust-property, or to reduce it to possession, in no wise affects his relations with his *cestuis que trust*, it is unnecessary to make them parties.
2. Where the want of parties does not appear on the face of the bill, the objection must be set up by plea or answer, and cannot be made for the first time in this court.
3. A person cannot avail himself of a lien, the discharge of which has been fraudulently prevented by his own acts.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

*Mr. Conway Robinson* for the appellants.

*Mr. Thomas J. Durant* for the appellee.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The appellants were defendants in the court below. Tucker and Hoskins, the other defendants, declined to appeal.

The case was ably argued here by the counsel upon both sides.

It is insisted that the bill is fatally defective for want of parties. It alleges that the complainant was the owner and holder of the ten promissory notes which lie at the foundation of the case. In his testimony, he says he held the legal title to them, and that they were delivered to him by their respective owners, with power to settle and dispose of them at his discretion, and with no condition imposed but the implied one that he should account for the proceeds to those from whom he received them.

The transfer created a trust. Those who transferred them were the *cestuis que trust*, and Brown was the trustee.

The general rule is, that in suits respecting trust-property, brought either by or against the trustees, the *cestuis que trust* as well as the trustees are necessary parties. Story's Eq. Pl., sect. 207. To this rule there are several exceptions. One of them is, that where the suit is brought by the trustee to recover the trust-property or to reduce it to possession, and in no wise affects his relation with his *cestuis que trust*, it is unnecessary to make the latter parties. *Horsly* v. *Fawcett*, 11 Beav. 569, was a case of this kind. The objection taken here was taken there. The Master of the Rolls said, " If the object of the bill were to recover the fund with a view to its administration by the court, the parties interested must be represented. But it merely seeks to recover the trust-moneys, so as to enable the trustee hereafter to distribute them agreeably to the trusts declared. It is, therefore, unnecessary to bring before the court the parties beneficially interested." Such is now the settled rule of equity pleading and practice. *Adams* v. *Bradley et al.*, 6 Mich. 346; *Ashton* v. *The Atlantic Bank*, 3 Allen, 217; *Boyden* v. *Partridge et al.*, 2 Gray, 191; *Swift and Others* v. *Stebbins*, 4 Stew. & P. 447; *The Association, &c.* v. *Beekman, Adm'r, et al.*, 21 Barb. 555; *Alexander* v. *Cana*, 1 De G. & Sm. Ch. 415; *Potts* v. *The Thames Haven and Dock Co.*, 7 Eng. Law & Eq. 262; *Story* v. *Livingston's Ex'r*, 13 Pet. 359. Where the want of parties appears on the face of the bill, the objection

may be taken by demurrer. Where it does not so appear, it must be made by plea or answer. Here the defect, if there was one, did not appear in the bill, and no plea or answer setting it up was filed in the Circuit Court. It was first made here. A formal objection of this kind cannot avail the party making it, when made for the first time in this court. *Story* v. *Livingston's Ex'r, supra.*

It is said that Hoskins prescribed a condition precedent; and that Brown, not having complied with it, never acquired any right or title to the property in controversy. We had occasion to consider this head of the law in *Davis* v. *Gray,* 16 Wall. 230.

Hoskins executed a deed to Brown, and forwarded it to Parkerson, to be held by him until all the notes of Hoskins given for the purchase-money, still outstanding, were cancelled and delivered to Parkerson. Parkerson was the recorder of the parish where the land was situated. Brown then held ten of the notes. He and Hoskins believed they were all. Upon being advised by Tucker of the deposit of the deed, Brown wrote to have a copy of it forwarded to him for examination, and inquired, as he had done several times before, whether Hoskins had in any way incumbered the property. Parkerson thereupon sent him a copy of the deed, with a certificate, signed himself as recorder, setting forth, that, upon examining the records in his office, he found that " said Hoskins has not subjected said property to any mortgage except as forfeited taxes to the State."

There was an eleventh note, upon which, several years before, a judgment had been rendered in favor of Mrs. Knight. The judgment had been so inscribed in the office of Parkerson, that, under the law of Louisiana, it became a mortgage upon the premises. The certificate was false, and Parkerson knew it. It cannot be doubted that Tucker knew these facts also. The inscription was, as it had been, concealed from Brown. This was the beginning of the web of fraud woven by the confederates. Brown, being satisfied with the deed, transmitted the ten notes to Parkerson, with directions to cancel them, to record the deed, and to send it to him by mail. Instead of doing as directed, Parkerson handed over the letter and notes to Tucker, withheld the deed from record, and retained posses-

sion of it.   Subsequently, Davis, the law partner of Tucker, visited Hoskins in Texas, where he lived, delivered up his deed to Brown, and procured from him a quitclaim-deed for the same property to Parkerson and himself for the consideration of $250.    Later, they gave Hoskins, voluntarily, a guaranty against his liability upon all the outstanding notes.    They conveyed the premises to Carey, a brother-in-law of Parkerson. Carey claims to have been a *bona fide* purchaser, without any notice of the rights of Brown.   In order to strengthen his title, he took measures to have the premises sold under the judgment in favor of Mrs. Knight.   Upon learning the existence of the judgment, Brown offered twice to furnish to Carey the means to discharge it.   The money was refused.   The property was sold under the judgment, and bought in by Carey. He paid the judgment and the costs.   The balance of his bid, upon which the property was struck off to him by the sheriff, remained in his hands unpaid, and unaccounted for to any one. Public notice was given at the sale of the claim of Brown. Thereafter Carey claimed to hold under the sale, as well as under the deed from Parkerson and Davis.

It is not denied that Parkerson and Davis had full knowledge of all the facts touching the conveyance by Hoskins to Brown when they received the deed from Hoskins to them; and the evidence, both direct and circumstantial, is plenary to show that Carey, before Davis and Parkerson conveyed to him, was equally well advised.   It is impossible to resist the conviction that there was a deliberate scheme; that all the appellants and Tucker were parties to it, and that every act of each of the Confederates touching the property, after the deposit of the deed to Brown with Parkerson, was done to give effect to the purpose of the conspiracy.

In the presence of these facts, the doctrine of conditions precedent can have no application.   Sterner principles intervene, and become factors in the determination of the case.

The court decreed that the deed of Hoskins to Brown was, as against the subsequent deed of Hoskins to Parkerson and Davis, a valid subsisting title; that the deed of Parkerson and Davis to Carey was void, and of no effect; that the ten notes should be delivered up by Tucker, and cancelled; that Brown

should pay to Carey the amount Carey had paid in satisfaction of the judgment; that, upon such payment being made, Carey should convey the property to Brown as trustee for those whom Brown represented in the litigation; and that the decree should be without prejudice to Brown's claims for mesne profits, and to Tucker's claim against Brown for professional services.

It is said the decree is erroneous because it did not ascertain the amount proper to be allowed to Tucker, and order its payment.

It was not proper to deal with that subject in this suit. Tucker had no lien either upon the notes or the land. Not having appealed from the decree below, he cannot object to it here.

, It is said, also, that the decree is erroneous as to the effect of the deed from Hoskins to Brown. Upon the delivery of the ten notes to Parkerson, the deed became effectual. He should have cancelled the notes, and put the deed on record.

The lien of the judgment was ample for the security and indemnity of Hoskins. Brown would have taken the title subject to the incumbrance. The light thrown backward by the subsequent events shows that he would have been ready and willing to satisfy the judgment whenever its existence was made known to him.

He was prevented from discharging the lien by the fraud of those who now seek to avail themselves of it. This they cannot be permitted to do.

It is insisted that the decree does injustice to Carey. It gave him all he was entitled to. He acquired whatever title he had *ex maleficio*, and held it as a trustee *in invitum* for Brown and his *cestuis que trust*. *Mongar* v. *Shirley*, not yet reported.

A case of clearer equity on one side, and of iniquity on the other, is rarely presented for the consideration of a court of justice.                                    *Decree affirmed.*