[Sac. Nos. 1242, 1243. Department Two.—March 16, 1906.]

H. MITAU, E. A. CASEY, and P. C. DRESCHER, Respondents and Appellants, v. J. W. RODDAN, W. B. RODDAN, LOUIS A. HORST, and E. C. HORST, Appellants and Respondents.

P. C. DRESCHER, Respondent, v. J. W. RODDAN, W. B. RODDAN, LOUIS A. HORST, and E. C. HORST, Appellants.

DEED OF TRUST AS SECURITY—ACCOUNTING—PARTIES.—In an action to enforce a deed of trust given to secure indebtedness to an individual beneficiary, and also to a firm of which he is a member, which involves an accounting between the beneficiaries, such firm, though not made a direct party to the deed of trust, is a necessary party to the action.

ID.—RULE IN EQUITY AS TO PARTIES.—It is the general rule in equity, continued in force by section 389 of the Code of Civil Procedure, that all who are interested in the subject-matter of a litigation should be made parties thereto, in order that complete justice may be done, and that there may be a final determination of the rights of all parties interested in the subject-matter of the controversy.

ID.—TRUSTEES OF EXPRESS TRUST—CONSTRUCTION OF CODE.—Section 369 of the Code of Civil Procedure, which provides that the trustees of an express trust may sue without joining the beneficiaries for whose benefit the action is prosecuted, only applies to suits against strangers affecting the trust property, and has no application where a suit is brought by the trustees which involves their relations with the beneficiaries, or the relations of the beneficiaries between themselves.

ID.—FAILURE TO OBJECT FOR WANT OF PARTIES—NECESSARY PARTIES NOT WAIVED—MANDATORY STATUTE.—Section 389 of the Code of Civil Procedure, providing that "when a complete determination of

CXLIX Cal.—1

the controversy cannot be had without the presence of other parties, the court must then order them to be brought in," is mandatory; and cannot be waived by failure to object by demurrer or answer. It is the duty of the court, on its own motion, to order such parties to be brought in, and its failure to do so is fatal to the judgment.

ID.—ADMISSION OF INDEBTEDNESS BY GRANTORS—DENIAL BY SUCCESSORS —ATTACK UPON FINDING—RULING NOT INVOLVED—WAIVER.—Where the grantors of the trust-deed, by failure to deny the indebtedness to the firm alleged in the complaint, admitted it, and their successors in interest denied the same upon information and belief, a ruling of the court, that the successors were bound by the admission, assuming it to be erroneous, is not involved in an attack upon the finding of such indebtedness, as not sustained by the evidence; and where the plaintiffs amply proved such indebtedness, and no counter evidence was adduced, but all of the defendants objected to plaintiffs' evidence on the ground that it was admitted by the pleadings, such objection was in effect an admission of the indebtedness claimed, which precludes the defendants from raising any question upon that subject upon appeal.

ID.—DAMAGES FOR BREACH OF CONTRACTS—ACCOUNTING—ISSUE—FINDING—APPLICATION OF GOODS SOLD.—Where the complaint claimed large damages for breach of several contracts by the grantors in the deed of trust for non-delivery of hops contracted for during the years from 1895 to 1899, and claimed in the general accounting of sales that a certain quantity of hops received were applied on the year 1895 at the price for that year, and the answer joined issue upon such application and alleged that such hops were applied upon the contract for the year 1892, for which no damages were claimed, at a much larger price, and the court found for defendant upon that issue, it was entirely equitable for the court to render judgment for damages for a total breach of the contract for the year 1895, and there was no admission of the pleadings which did not justify such judgment.

ID.—CONTRACT TO SELL HOPS—RIGHT OF INSPECTION AND SELECTION— PRACTICAL CONSTRUCTION OF PARTIES.—Where a contract to sell hops conferred an option upon the buyer of making a choice of first, middle, or last pickings thereof, but did not expressly confer a right of inspection, where the parties themselves treated the contract as conferring such right, so long as the contract was harmoniously carried out by them their practical construction of it will be followed by the courts.

ID.—HARMLESS EVIDENCE OF CUSTOM TO INSPECT. — In view of the practical construction of the contract by the parties, as including the right of inspection, the admission of evidence of a custom to allow buyers of hops to inspect them, even if erroneous, was harmless and inconsequential.

ID.—ALLOWANCE OF ATTORNEYS' FEES TO TRUSTEES—SILENCE OF TRUST-DEED—RESTRICTION OF ALLOWANCE.—Although the trust-deed is

silent as to the allowance of attorneys' fees to the trustees in the action brought by them, yet where the court found that the action was necessarily brought it properly allowed them attorneys' fees, notwithstanding the litigation was mainly between one of the beneficiaries and the defendants. The allowance should be restricted for attorneys' fees incurred on their behalf in the litigation as far as it may be necessary to be commenced by them in the due execution of their trust.

ID.—TRIAL ON THEORY OF PROPER PARTIES—DISPOSITION OF APPEALS— ELECTION OF NECESSARY PARTY TO BE BOUND.—Where the only error found is that the firm as a necessary party was not brought in by the court, but the trial was had on the theory that all necessary parties were before the court, the court in reversing the judgment to bring the firm before the court will not direct a retrial of the issue if such firm should elect, under proper pleading or stipulation, to be bound by the findings and conclusions of law theretofore made.

APPEALS from judgments of the Superior Court of Yuba County.  E. A. Davis, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, Hiram Johnson, and Charles W. Slack, for Defendants, Appellants and Respondents.

Albert M. Johnson, and Devlin & Devlin, for Plaintiffs, Respondents and Appellants.

LORIGAN, J.—Three appeals are taken in these cases, all presented upon one bill of exceptions, and will be disposed of together.  The plaintiffs in one case are H. Mitau, E. A. Casey, and P. C. Drescher; in the other P. C. Drescher is the sole plaintiff.  The defendants and appellants in both cases are J. W. and W. B. Roddan and Louis A. and E. C. Horst.

The first action was brought by Mitau and Casey, as trustees in a deed of trust, and P. C. Drescher, against the Roddans and Horsts.  The Horsts were made defendants, for the reason that they had, subsequent to the execution of the deed of trust, bought the interests of the Roddans in the property affected thereby.  It appears that for several years prior to 1896 the Roddans were hop-farmers on lands owned by them near Wheatland, in Yuba County, and the plaintiff Drescher was a member of the partnership firm of Mebius

& Drescher, composed of himself and Ludwig Mebius, which firm was engaged in the business of buying and selling hops. In July, 1896, the defendants Roddan executed to the plaintiffs Mitau and Casey, as trustees, parties of the first part, and Drescher, as party of the third part, a deed of trust, by which they conveyed to Mitau and Casey, as trustees, their land in Yuba County. This deed was given to secure, in the first instance, the payment of a promissory note for $31,400 and interest, executed by the Roddans in favor of Drescher, together with further advances. It was also expressly given as security for all indebtedness of any kind or description—all claims, demands, indebtedness, and rights or causes of action—from whatever source arising, which then or thereafter during the continuance of the trust might exist in favor of, or become due to, Drescher or to the firm of Mebius & Drescher. While the trust-deed ran in favor of the firm of Mebius & Drescher, that firm was not named in the instrument as a party thereto. The deed of trust contained also certain provisions making it a chattel mortgage, not to Mitau and Casey, but to Drescher individually, on all crops to be grown on the lands described in it during the continuance of any part of the indebtedness referred to. The complaint alleged that default had been made by the Roddans in the payment of the note to Drescher of $31,400, and that they were also indebted to Mebius & Drescher for merchandise sold and money advanced, evidenced by two promissory notes executed by them, aggregating, with interest, respectively, $8,258.77 and $13,485.10. It was further set forth in the complaint that the Roddans, individually and jointly, had entered into several agreements for the sale of their hop crops to Mebius & Drescher; these contracts covering the years consecutively from 1895 to 1899; that some of these contracts had been broken by the Roddans, and that the firm of Mebius & Drescher had suffered damages therefrom in large amounts. The complaint further alleged that Drescher and Mebius & Drescher, the beneficiaries under such trust-deed, had, prior to the commencement of the action, applied to the trustees to sell the property mentioned in the trust-deed, in order to accomplish the objects therein prescribed, and that the plaintiffs, Mitau and Casey, as trustees, were in doubt as to the amounts due to Drescher and Mebius

& Drescher; that it was in dispute as to how much was
due upon such indebtedness, as a considerable part of it
was unliquidated; that a full accounting would be necessary
to determine the amount, and that the Horsts, as successors
of the Roddans, disputed the validity of certain contracts
with Mebius & Drescher, upon which that firm claimed to be
entitled to damages for their breach; that such trustees
desired the advice of the court as to the manner in which
said trusts should be carried out and performed; that they
did not feel called upon to exercise, without the aid of the
court, the power of sale conferred by the deed of trust, nor
did they feel safe in proceeding to sell said property until
after the amount of the indebtedness should have been ascer-
tained. The prayer of the complaint was, among other things,
that an accounting be had between Drescher, and between
Mebius & Drescher and the defendants J. W. Roddan and
W. B. Roddan and each of them; that the amounts due on
said promissory notes be fixed, the amount of damages, if
any, sustained by Mebius & Drescher by reason of the breach
of the several contracts mentioned in the complaint be ascer-
tained and determined, and that whatever amounts might be
found due be declared to be secured by said deed of trust.
The matters and allegations so far referred to pertain to the
first action upon the trust-deed.

In the second action,—Drescher v. Roddan et al.,—Drescher
alone was plaintiff, and the Roddans and Horsts were defend-
ants. That suit was brought by Drescher under the chattel
mortgage provision of the trust-deed to which we have already
called attention. The complaint in that action contained the
same allegations of indebtedness of Roddans to plaintiff and
the firm of Mebius & Drescher; made substantially the same
claim for damages on behalf of Mebius & Drescher against
the Roddans, and prayed for an accounting between the
defendants Roddan and the firm of Mebius & Drescher similar
to that demanded in the action upon the trust-deed, and for
a foreclosure of the chattel mortgage for the amount found
due upon such accounting as a lien upon the hop crops
mentioned. Defendants filed a joint answer. No issue was
made as to the amount due on the promissory note to P.
C. Drescher, nor did the Roddans deny the indebtedness
evidenced by the two promissory notes executed in favor of

Mebius & Drescher. The Horsts, however, denied this latter
indebtedness, and all the defendants denied any liability for
damages by reason of alleged breaches of the contracts between
the defendants Roddan and Mebius & Drescher set forth in
the complaint in both actions, and averred that the Roddans
had not béen given proper credit by Mebius & Drescher for
the purchase price of hops delivered to them under the
contracts.

Judgments were rendered in both cases in favor of plaintiffs
to the effect, among other things, that defendants Roddans
were indebted to Mebius & Drescher in the sum of $69,485.32.
Appeals are taken therefrom by the defendants; one bill of
exceptions being by stipulation presented and used on both
appeals. In addition to the appeals taken by the defendants,
an appeal is also taken by the plaintiffs from that portion
of the judgment in the action relative to the trust-deed which
refuses to allow attorney's fees to the trustees in the prosecu-
tion of such action. That appeal will be considered later;
present attention being given to the merits of the appeals
taken by the defendants. The points—four in number—urged
by the defendants for a reversal are common to both their
appeals, and will be discussed as they are presented.

1. The first and principal point relied on by defendants
for a reversal is that the court erred in trying and deciding
the cases without the presence of the firm of Mebius &
Drescher as a party to the action. This firm was neither made
a party plaintiff nor defendant in the suits. Before the
trial of these actions was commenced, counsel for defendants
requested the court to bring in of its own motion, or to require
the plaintiffs to bring in, either as parties plaintiffs or defend-
ants, the copartnership of Mebius & Drescher, as a necessary
party to a complete determination of the rights of all the
parties to the controversy, and for that purpose to direct the
plaintiffs to file an amended or supplemental complaint, as
the court might deem proper. This motion was denied by
the court; defendants excepted, and now urge the ruling
of the court as error. We are satisfied that the motion of
the defendants should have been granted. The principal relief
sought in the actions, in fact, the main reason which justified
their being brought at all, was the necessity of obtaining an
accounting. It is the general rule in equity, continued in

force by the provisions of the Code of Civil Procedure (sec. 389), that all who are interested in the subject-matter of a litigation should be made parties thereto, in order that complete justice may be done, and that there may be a final determination of the rights of all parties interested in the subject-matter of the controversy. (*McPherson* v. *Parker*, 30 Cal. 455 [89 Am. Dec. 129] ; *Young* v. *Hoglan*, 52 Cal. 466; *Wright* v. *Ward*, 65 Cal. 525 [4 Pac. 534] ; Code Civ. Proc., sec. 389). In an action such as is brought here, which directly involves a general accounting between the beneficiaries under a trust-deed, this rule must, of course, necessarily apply. No complete disposition of the matter properly in controversy—a settlement of the claims in dispute between Mebius & Drescher and the defendants—could be made without the presence of the former as parties to the action. We do not, however, understand respondents to contend that Mebius & Drescher were not necessary parties. Their contention is that as Mitau and Casey were trustees of an express trust for all the beneficiaries, they were authorized and empowered by section 369 of the Code of Civil Procedure to maintain this action and represent Mebius & Drescher as beneficiaries in any proceeding relative to the trust, including the dispute between Mebius & Drescher and the other beneficiaries as to the amount of indebtedness for which the trust property was liable as security; that they did so represent them, and that it was not necessary to join that firm directly as a party to the action. It is further contended that as no demurrer was interposed on the ground of nonjoinder, or defective parties, and as the point was not raised in the answer of defendants, it must, under section 434 of the Code of Civil Procedure, be deemed to have been waived.

As to the first point. While it is true that by section 369 of the Code of Civil Procedure the trustees of an express trust may sue without joining with them the persons for whose benefit it is prosecuted, this section only applies to suits by the trustees, affecting the trust property or rights under it against strangers. It has no application where a suit is brought by the trustees which involves their relations with the beneficiaries, or which involves the relations of the beneficiaries between themselves. The code rule is simply the old equity rule, which recognizes the exception we have mentioned.

The rule and the exception are stated in Story's Equity Pleading (10th ed., p. 204, in note B), that "when a suit brought by a trustee to recover the trust property does not give rise to any conflict of interests between him and the *cestui que trust,* and does not involve an investigation as to their relations with each other, the *cestui que trust* are not necessary parties." To the same effect are *Horsley* v. *Fawcett,* 11 Beav. 565; *Boyden* v. *Partridge,* 2 Gray 190; *Ashton* v. *Atlantic Bank,* 3 Allen 217; *Swift* v. *Stebbins,* 4 Stew. & P. 447; *Carey* v. *Brown,* 92 U. S. 172. The court, in *Carey* v. *Brown,* 92 U. S. 172, after declaring the general rule that all parties in interest were required to be joined, says: "To this rule there are several exceptions. One of them is that where the suit is brought by the trustee to recover the trust property, or to reduce it to possession, and in no wise affects his relations with the *cestui que trust,* it is unnecessary to make the latter parties." In *Estate of Straut,* 126 N. Y. 212, [27 N. E. 259], in the matter there under consideration, it was held that the beneficiaries to the trust were not necessary parties, but it was further said that "if the purpose of the action had been, among other things, to determine the rights as between the beneficiaries themselves, or as betwen the trustees and the beneficiaries, then it would have been necessary to bring them in as parties." This necessity of making all persons parties in actions under the trust, where the relations of the trustees and beneficiaries are in question, or rights of the beneficiaries as between themselves are involved, is, in effect, the rule laid down in this state in *McPherson* v. *Parker,* 30 Cal. 455, [89 Am. Dec. 129], and in *O'Connor* v. *Irvine,* 74 Cal. 444, [16 Pac. 236]. In view of these authorities, the claim of respondents that Mebius & Drescher were before the court by Mitau and Casey, their trustees, as effectually as if they had been directly brought in as parties to the suit, is untenable.

Nor is there any force in the further claim that the objection that Mebius & Drescher were not made parties was waived because not raised by demurrer or answer. It is provided by section 389 of the Code of Civil Procedure, that "when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in." This provision of the statute

is mandatory. When, upon the application by defendants, it appeared to the court, as it necessarily did from the pleadings, that it was essential to a full and complete determination of the controversy before it, that Mebius & Drescher should be made parties, it was the imperative judicial duty of the court to order them brought in, notwithstanding no objection to their absence had been raised by demurrer or answer. It was not a matter of discretion but of duty for the court, even upon its own motion, to require their presence. In *O'Connor v. Irvine,* 74 Cal. 442, [16 Pac. 236], this same matter was before this court for consideration, and it was there said: "If the necessary parties to a full determination are not before the court, it is the duty of the court on its own motion, to order them brought in, and this, although the defendants in the action have omitted to raise the objection of defective parties by demurrer or answer. The failure of the court so to do is fatal to the judgment." (See, also, *Winter* v. *McMillan,* 87 Cal. 265, [25 Pac. 407, 22 Am. St. Rep. 243]; Pomeroy's Code Remedies, sec. 419.)

Upon the oral argument in this case the attorneys for respondents presented, and, by permission of the court, filed, a stipulation signed by them, and an agreement executed by Mebius & Drescher, consenting to be bound by the judgment as entered, and waiving any claim for further amounts than were allowed them in such judgments, and agreeing to receive the amounts awarded such firm by the judgments, in full satisfaction of any indebtedness, obligation, or cause of action secured by said deed of trust, and asked that in case the judgments were reversed, that such reversals be made, not absolute, but conditional only; that such judgments be reversed unless, within a specified time, respondents furnish to appellants and deliver to them, upon payment of the amounts found due Mebius & Drescher by the judgments, the written waiver of said partnership firm of any further claim against appellants upon the indebtedness secured by said deed of trust. We mention this offer here in connection with our discussion of the point that Mebius & Drescher should have been made parties to the action, as the proffered stipulation and consent bear directly upon that matter. We will give it no further attention at this time, but will revert to it later, after disposing of the other points raised on this appeal.

2. As a second ground for a reversal, it is urged by defend-
ants that the court erred in finding that the defendant J. W.
Roddan was indebted to Mebius & Drescher in the sum of
$8,258.77 and interest, aggregating $9,467.82, and that W. B.
Roddan was indebted to said firm in the sum of $12,321.80
and interest, aggregating $14,128.52. The indebtedness so
found by the court was that represented by the two promissory
notes executed by the Roddans to the firm of Mebius &
Drescher, and which we have heretofore mentioned. The com-
plaint not only set up the notes, but set forth the various
items of cash and merchandise—dates and amounts—furnished
by Mebius & Drescher to the respective Roddans, which in
the aggregate constituted the principal sums specified in said
notes. In their answer (jointly made), the Roddans, for
failure to deny the alleged indebtedness, admitted it; the
Horsts denied it upon information and belief. The right of
the Horsts to question the indebtedness arose under an agree-
ment between them and the Roddans accompanying their
purchase of the property after the execution of the trust-deed,
and subject to it. In that agreement the Horsts bound them-
selves to indemnify and save harmless the Roddans from all
liability for any indebtedness secured by the trust-deed, but
at the same time it was expressly stipulated that the genuine-
ness and justness of any such indebtedness was in no way
admitted. Upon the opening of the trial, on submission of
that proposition to the court, it was ruled that this indebted-
ness was admitted by the pleadings, notwithstanding the
denial on information and belief of the Horsts. Assuming this
ruling to have been error, it is not involved in the point made
by appellants, which we are now considering; that goes only
to the sufficiency of the evidence to sustain the finding at-
tacked; it being in fact insisted by the appellants that there
was no evidence at all to support this finding. It appears
however, that although the court had previously ruled that
the indebtedness claimed was admitted by the pleadings, re-
spondents nevertheless proceeded to and did introduce ample
evidence to prove it. By making such proof opportunity was
thus offered appellants, notwithstanding the previous ruling
of the court, to also introduce evidence upon the same subject
of indebtedness to meet that offered by the respondents. No
evidence was offered upon their part, nor did they attempt

to offer any. On the contrary, while respondents were making proof and inquiring as to several of the items of the indebtedness disputed, objection was made by appellants to the introduction of such evidence, on the ground that the indebtedness was not denied by the pleadings. This was, in effect, an admission of the indebtedness claimed, even if the proof actually offered was not ample to support the finding, and precludes the appellants from now raising any question on that subject.

3. The defendants next contend that the judgment rendered was erroneous in that it included in the sum of $2,400 damages allowed for a breach of one of the contracts for the sale of hops made by the Roddans with Mebius & Drescher, dated May 7, 1895, an amount of $1,129.20, contrary to the express allegations and admissions of the pleadings. This latter amount represents the value of 18,820 pounds of hops at six cents per pound. Plaintiffs alleged in their complaint that this quantity of hops was received by Mebius & Drescher under a contract with the Roddans of May, 1895, and their value at eight cents per pound, as specified in that contract,—$1,505.60,—was credited on the general indebtedness of the Roddans to Mebius & Drescher; that this was the only delivery under that contract, which called for a delivery of forty thousand pounds, and they asked damages for the breach of the contract. Defendants denied that only this quantity of hops of that value was received by Mebius & Drescher on that contract, and, in effect, averred that large quantities of hops had been received on the several contracts set forth in the complaint of the value of $2,693.86. One of the contracts mentioned in the complaint, but upon which plaintiffs claimed no damages, was a contract of 1892. In this contract the value of hops to be delivered under it was fixed at thirteen cents per pound. The court found in favor of defendants on the issue raised; that this 18,820 pounds of hops, together with some nine bales, were delivered to Mebius & Drescher under the contract of 1892, and that defendants were entitled to the credit they asked of $2,693.86 therefor. As to the contract of 1895, the court found a total breach and awarded plaintiffs damages at the rate of six cents per pound on forty thousand pounds of hops, being the difference between the contract price of eight cents and the market price of fourteen cents, amounting to $2,400.

Appellants' claim is that as the plaintiffs admitted in their complaint the receipt of 18,820 pounds of hops under the contract of 1895, the court erred in including that amount in the award of damages for the breach of that contract. This contention of appellants would be entitled to more particular consideration if they had let the allegation as to the delivery of this quantity of hops under the contract of 1895 stand unchallenged. It is insisted now that they did so. As we construe the pleadings in this respect, however, we think that the issue made on this point amounted to more than a question whether plaintiffs had received more than 18,820 pounds of hops on the contract of 1895 at the value stated; that the issue actually raised and the one to which the evidence under it was addressed was upon which contract should this 18,820 pounds of hops be applied and what was their value; plaintiffs alleging that they should be applied on the contract of 1895 at the valuation per pound fixed thereby; the defendants averring that they were to be applied on a contract of 1892 and at a larger valuation. In this view of the issue the court found that this 18,820 pounds of hops were not to be applied upon the contract of 1895, but upon that of 1892, as it was claimed that they should be in the averment in defendants' answer. The disputed application of this quantity of hops having been settled in favor of defendants and credit given them therefor under the contract of 1892 left the contract of 1895 for the breach of which plaintiffs claimed damages entirely unfulfilled, and the court properly awarded damages on that basis. This was entirely equitable, and we are satisfied there was no admission in the pleadings which did not justify the judgment.

4. The last point made by appellants is that the court erred in admitting, upon an alleged breach of one of the contracts in question, evidence of a custom prevailing generally in the hop-growing region of Wheatland, where the crops in dispute were raised, under which a buyer had the right to examine and inspect the hops upon the premises where grown before taking delivery thereof. Under the finding in the case, however, we think this error, if error at all, was immaterial. By a written contract of May, 1895, W. B. Roddan agreed with Mebius & Drescher for the years 1895 to 1899 inclusive, to sell them annually forty thousand pounds of a

choice quality of hops to be grown on his hopyard at Wheatland, and to deliver in fulfilling this contract "either first, middle, or last pickings of his respective crops, or part of each, as may be desired or called for by the party of the second part." The deliveries were to be made by Roddan as the hops might be ready during the months of August, September, and October of each year; ten days' notice to be given to Mebius & Drescher before he would tender delivery; such delivery to be made at the depot in Wheatland. The contract further provided that in the event of Roddan neglecting or willfully injuring the crop of hops by improper care in picking, drying, or baling, or if the quality intended for delivery should be inferior to what the contract called for, Mebius & Drescher would nevertheless have the privilege of taking them at a reduction in the price equal to the difference in value between such hops and those called for in the contract.

It is insisted by respondents that a reasonable construction of these provisions of the contract itself indicates that a right of inspection was given to Mebius & Drescher; that the option accorded them of making a choice of either first, middle, or last pickings of the hops as stated, or the right to exercise their option of taking the hops, even if not of the quality described in the contract, or not properly picked, cured, or baled, could not be exercised without an inspection; and that as the right was thus given by the contract, admission of evidence of a customary right of inspection also was harmless. There is much of force in the position taken by respondents as to the meaning of these terms of the contract; whether, reasonably construed, they did not extend the right of inspection. While the contract does not directly confer any right of inspection, we think that the terms which we have particularly referred to, at least, fairly raise a question whether Mebius & Drescher were not given, under a reasonable construction of them, such a right. We do not find it necessary, however, to enter into any consideration of the construction to be placed by us on the contract in this particular, because it appears from the findings of the court, which were unchallenged, that the parties themselves placed a practical construction on it, which is controlling. The trial court found, with reference to the contract in question, that in the years

1895 and 1896 Roddan notified Mebius & Drescher when the crops for those years were ready for delivery; that thereupon Mebius & Drescher, within a time satisfactory to Roddan, went on the premises and examined and inspected his entire crop, and made selections therefrom to fill their contract; that the hops so inspected and selected were marked and stamped by Mebius and Drescher so as to identify and select them from the remainder of the crop, and thereafter Roddan hauled to the railroad depot at Wheatland the hops thus selected and accepted. The same course was pursued by the parties in August, 1897, as to a portion of the crop ready for delivery at that time, in partial fulfillment of the entire quantity to be delivered that year. As to the portion of the crop to be delivered in September, 1897, Roddan wrote Mebius & Drescher, early in that month, that it was baled, to come and inspect it, and make their selection, but when, towards the end of September, they went to do so,. Roddan had already sold the crop to the Horsts, and all of them refused to allow Mebius & Drescher to make any inspection or to take any delivery whatever under the contract.

It will be thus observed that from the very beginning, and during the years while the terms of the contract were being harmoniously carried out by the parties, and up to the very month of the repudiation of the contract by Roddan and the Horsts, the construction placed upon it by both parties to it was that Mebius & Drescher had the right of inspection. This was a practical construction placed upon the contract by the parties themselves, which renders it immaterial to consider what might be the literal construction of its terms. Parties to a contract have a right to place such an interpretation upon its terms as they see fit, even when such an interpretation is apparently contrary to the ordinary meaning of its provisions. And in all cases where the terms of their contract, or the language they employ, raises a question of doubtful construction, and it appears that the parties themselves have practically interpreted their contract, the courts will follow that practical construction. It is to be assumed that parties to a contract best know what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to his own interests, and to insistence on his rights, and that whatever is done by the parties contemporaneously with

the execution of the contract·is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it. The law, however, recognizes the practical construction of a contract as the best evidence of what was intended by its provisions. In its execution, every executory contract requires more or less of a practical construction to be given it by the parties, and when this has been given, the law, in any subsequent litigation which involves the construction of the contract, adopts the practical construction of the parties as the true construction, and as the safest rule to be applied in the solution of the difficulty. (*Mayberry* v. *Alhambra etc. Co.*, 125 Cal. 446, [54 Pac. 530, 58 Pac. 68] ; *Keith* v. *Electrical Engineering Co.*, 136 Cal. 181, [68 Pac. 598].) In the case at bar the parties placed a practical construction upon the contract from the very beginning in favor of the right of inspection by Mebius & Drescher. They so construed it for a number of years, until Roddan disposed of the crop which he had written to Mebius & Drescher to come and inspect, and the question of construction was practically raised by strangers to the contract—the Horsts. Within the rule as above announced, the parties were bound by such practical construction, and, as that construction gave Mebius & Drescher the right of inspection, it was inconsequential error, if it was error at all, to admit evidence of a right also by prevailing custom to do so. This disposes of all the points made by defendants upon their appeals.

Now, as to the appeal by plaintiff which is taken from that portion of the judgment refusing to make any allowance to the trustees for attorneys' fees. The court seems to have denied the allowance because the trust-deed did not expressly provide for attorneys' fees, and also because the litigation was really between Mebius & Drescher on one side, and the defendants on the other. The court, however, found that the action commenced by the trustees was necessary. We will not analyze the terms of the contract to ascertain whether

it expressly provided for attorneys' fees in this action or not. The trustees were not concluded from allowance if it did not. It is provided by section 2273 of the Civil Code that "A trustee is entitled to the repayment, out of the trust property, of all expenses actually and properly incurred by him in the performance of his trust." And the general rule is stated as follows: "Whenever necessary expenses are incurred in the administration of the trust, the trustee is entitled, without any express provision to that effect, to make the payments required to meet the necessary expenses out of the funds in his hands belonging to the trust. It is the duty of a trustee to assert and protect, diligently and faithfully, the interests of the beneficiaries, and if, in fulfilling that duty, he becomes involved in necessary litigation, he will be allowed in his accounts a reasonable amount expended for legal advice, counsel fees, and other expenses." (28 Am. & Eng. Ency. of Law, 2d ed., 1089, 1090, 1091.)

Our attention is not called to any authority in this state or elsewhere holding to the contrary. As the court found that it was necessary for the trustees to bring the action, they were entitled, under the code and the general rule, to expenses, including attorneys' fees, incurred in discharging their duty in that regard under the trust. Notwithstanding the court finds the action was properly brought by the trustees, its refusal to allow attorneys' fees seems to be based also on the fact that the real litigation was between Mebius & Drescher on the one hand, and Roddan and Horsts on the other. But this afforded no reason for refusing any allowance to the trustees. They were compelled to bring the action that these disputes might be settled, and the trustees directed by the court how to execute the trust as to the conflicting and complicated matters involved under it. The fact that after suit brought, the main litigation developed into a controversy over the demands between Mebius & Drescher and defendants only affected the amount of the allowance which should be made to the trustees. While not entitled to an allowance covering all the litigation, they were at least entitled to an allowance for that portion of it which the court found it was necessary for them to inaugurate. There should be no difficulty in segregating that from the main litigation. All that is necessary is to restrict the allow-

ance on behalf of the trustees to an amount which will compensate them for attorneys' expenses incurred in the litigation as far as it was necessary to be inaugurated by them in due execution of their trust. This disposes of all the points made on appeal by either side.

Returning now, as we said we would, to the stipulation and consent filed by Mebius & Drescher, and their attorneys: We do not think that we should make the order in the manner and form suggested therein. We are satisfied, however, that an absolute reversal of the judgment should not be made. The litigation, as the transcript discloses (785 pages), was quite complicated. The cases were fully tried on all the material issues, and on the theory that Mebius & Drescher were in court. The defendants have, in their appeals, urged all the prejudicial errors which they claim entitled them to reversal. We have decided that there is no merit in any of them, save that Mebius & Drescher should have been made parties. The only effect of the failure to make them parties is that they are not bound by the judgments appealed from. We perceive no valid reason, however, why, when the cases are sent back to have them brought in, and they appear, that there should be a retrial of any of the issues raised in the cases, if they should elect, under proper pleading or stipulation, to be bound by the findings and conclusions of law theretofore made. We think, in the interest of justice to all parties, this should be permitted.

It is ordered, therefore, that the judgments appealed from be reversed; that the lower court order Mebius & Drescher to be brought in as parties to both actions; that upon their appearance, if, by proper pleading or stipulation filed, they shall elect to be bound by the findings and conclusions as already made (except as to the matter of attorneys' fees to the trustees), that no further retrial or consideration of any other issue in the case, save that, need be had. As to that issue, the finding of the court that the trustees were not entitled to an allowance for attorneys' fees is not sustained by, and is contrary to, the evidence, and necessitates a different finding by the court upon the evidence as it stands in the record, which the court is directed to make. Upon making such finding, and Mebius & Drescher having signified their election to be bound by that and the other findings and

CXLIX Cal.—2

conclusions theretofore made, the court shall thereupon direct judgment to be entered on the findings and conclusions, without further trial of any issue in either case. Should Mebius & Drescher, however, upon their appearance file such pleadings as raise issues between the parties as to any matter not previously tried, or new issues, then the court shall proceed to a new trial only of the issues involved under such pleadings.

The judgments appealed from are reversed and the cases remanded with directions to the lower court to proceed with the disposition of them under the directions contained in this opinion. Costs of appeal are allowed to the respective appellants.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.