[Civ. No. 4406. Third Appellate District.—August 8, 1933.]

C. A. BAYLES et al., Respondents, v. J. W. BROWNING, Appellant.

Seth Millington and Rutledge & Rutledge for Appellant.

Armfield & Eddy for Respondents.

PULLEN, P. J.—Respondents and the appellant entered into a lease and agreement whereby respondents rented from

appellant two tracts of land, one containing approximately 400 acres and another 70 acres, for the growing of rice. The controversy here revolves around the obligation of the parties with respect to the delivery of water and the application thereof to the tracts in question.

Two sources of water are mentioned in the contract. One of these was Butte Creek, which lies about two miles westerly from the leased lands. A system of canals carries the water from Butte Creek to the 400-acre tract, one leading to the northwest corner thereof, another going to the northeast corner of the same tract. This latter system of canals had in more recent years been allowed to fall somewhat in disuse, and to have carried the water of Butte Creek to the northeast corner of the tract during the year in question would have required some reconstruction and repair.

The other source of water referred to in the contract was Cherokee Canal, from which water was diverted and conducted to the northeasterly corner of the larger tract and from there spread over the entire leased lands. Early in the season ample water was obtained from Cherokee Canal, but as the season advanced the amount diminished until it became insufficient to supply the demand. An adequate supply continued to flow in Butte Creek, but no use was made of any water from that source. A portion of the crop failed by reason of the lack of water and plaintiffs brought this action against the defendant for the loss thereof. From the judgment in favor of plaintiffs awarding them damages therefor defendant presents this appeal. Defendant, appellant herein, contends he was not required by his contract to deliver water from Butte Creek to the land at the headgate in the northeast corner of the tract, but was obligated to and did deliver water from Butte Creek at the northwesterly corner thereof and that respondents failed to construct the necessary laterals or ditches to take the water from that source and apply it over the land.

Those portions of the agreement pertinent to the questions here involved are as follows:

"The party of the second part (respondent) agrees to plow and level said land. . . . In due and proper season in 1926 he shall first properly prepare said land for rice, constructing the necessary laterals, ditches and checks so that the same may be properly irrigated and drained, . . . ; care

for said crops while growing, attend to the proper irrigation of said land throughout the growing season and see that water is properly applied and retained in said land throughout said growing season; care for the drainage of the land and as soon as the rice is matured to properly drain the same, and cut, thrash and sack the same. . . . ''

On the part of the appellant it is provided, ''party of the first part (appellant) will furnish the water for the proper irrigation of said land in the manner following, that is to say: party of the first part will deliver water in two main canals, one from Butte Creek and one from Cherokee Canal and the delivery of water to said land in said main canals shall be deemed a full performance of the obligation on the part of the first party to furnish water, it being understood that the party of the second part shall construct the necessary laterals and ditches to take said water from said canals and distribute it over said land for the proper irrigation of the same, . . . party of the first part shall have water in said main canals sufficient for the irrigation of said land by the first day of April, 1926, and sufficient water will be maintained therein for the irrigation of said land during the irrigation period.''

In addition to the foregoing the contract further states:

''It is understood and agreed, however, that the party of the first part shall not be liable in any way for failure or shortage of water, or that anything herein contained shall be deemed a guaranty on the part of the party of the first part as to the adequacy of the water supply, nor shall the party of the second part be held liable for loss of crops resulting from shortage of water not due to his failure to properly distribute the same upon the land.''

It is apparent from the foregoing that appellant agreed to furnish water, but the dispute here is as to the point where respondent was to receive it. Respondents contend that the contract intended to and did specify that the water was to be delivered *in* two main canals and that the delivery of the water *to the land* in said main canals was the duty of appellant and that the responsibility of respondents was to see that it was properly applied to the leased lands.

Appellant contends for reversal largely upon the receipt of testimony by the trial court of oral declarations made by appellant before the execution of the lease. It

will be recalled that the paragraph previously quoted provides, "the party of the first part shall not be liable in any way for the failure or shortage of water, . . . " At or prior to the signing of the lease containing the foregoing, respondents asked appellant what was meant by the clause "failure or shortage of water" and appellant replied, "of course you don't expect me to furnish water in case of a drought, that is what that clause means", thereby inferring, so appellant claims, that he would be liable for any shortages of water except that by drought.

Objection was also made by appellant to another conversation between one of respondents and appellant as to where the water would be delivered. We quote again from the transcript:

"Q. Now, at or about the time this lease was signed up, I understood you to say this morning that you had some conversation with Mr. Browning on the lease; is that correct? A. Yes. Q. Now you have testified that you went out all over the land, around the boundaries of the land? A. Yes, sir. Q. Did you at any time go to the place where water was to be supplied? A. Yes, . . . we went to a point here southwest of a large barn here. Q. And what is it marked, here on the map, 'Headgate'? A. Headgate. Q. You went there, and you and Mr. Browning alone? A. Yes. Q. All right; what if anything was said there between you and Mr. Browning at that time pertaining to this lease? . . . A. He told me they delivered the water right southwest of the barn at this weir in sufficient quantities to irrigate this whole section, or this whole 400-acre tract, and also this tract down here. Q. That is the seventy-acre tract? A. The seventy."

Appellant also told respondents as they were viewing the premises prior to the execution of the lease that water sufficient to irrigate the entire tract was delivered at the headgate near the northeast corner of the larger tract and also said that point was the junction of the Cherokee Canal lateral and the Butte Creek lateral.

Relying upon this testimony respondent claims they made no preparation either by the construction of canals to distribute the water over the ground from the northwest corner of the tract nor made checks so water could be used from that point.

Objection was also made to testimony of an official of the Sutter Butte Canal Company that the canal company had water available which could have been purchased to irrigate the lands in question.

We believe all the foregoing testimony was properly admitted in order that the court and jury could get the situation of the parties and the surrounding circumstances.

In *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221 [41 Pac. 876, 877], the law applicable to the present situation is thus stated: "For the purpose of determining what the parties intended by the language used, it is competent to show not only the circumstances under which the contract was made, but also to prove that the parties intended and understood the language in the sense contended for; and for that purpose the conversation between and the declarations of the parties during the negotiations at and before the time of the execution of the contract may be shown."

Also in the case of *Scott* v. *United States*, 12 Wall. 443 [20 L. Ed. 438], the court said: "In cases like this it is the duty of the court to assume the standpoint occupied by the parties when the contract was made—to let in the light of the surrounding circumstances—to see as the parties saw, and to think as they must have thought in assenting to the stipulations by which they are bound. This process is always effective. When the terms employed are doubtful or obscure there is no surer guide to their intent or meaning."

Neither the point of delivery of the water nor the source of the water supply were mentioned in the contract. It merely provided that the water would be delivered *in* two main canals, and delivery *in* two main canals to the land would constitute full performance on the part of appellant. From long acquaintance with the land by respondents and from the tour of inspection with appellant prior to the execution of the contract showed them there was one canal from Cherokee Canal to the northeast corner and from Butte Creek Canal a series of canals to various points, one of which, however, led to the northeast corner and to the site of the headgate referred to. It was therefore proper to identify the canal and point of delivery which the parties had in mind when discussing the agreement.

It appeared from the testimony of various witnesses and maps in evidence that the only established intake on the

rented premises was at or near the headgate referred to in the testimony above, which was in the northeast corner of the tract. It also appeared that the fall of the land south of the irrigation canal leading from the headgate was southwesterly, and north of that canal the fall was westerly, all tending to support the finding of the jury as to the intention of the parties.

Appellant attempted to show the land could be irrigated from the northwesterly corner, but in addition to that being lower than the surrounding area, there was also between the canal containing the water from Butte Creek and the land itself, a borrow pit, a levee and a canal or ditch. With such testimony of the physical condition existing upon the land the jury were fully sustained in their conclusions.

It is not contended that respondents failed to properly distribute the waters reaching the land, but it is apparent that the loss of the crop was due to the failure of appellant to furnish the water as he agreed in his contract.

It is also urged by respondents that after the water began to fail in Cherokee Canal appellant purchased water from the Sutter Butte Canal Company and delivered the same to the headgate. From that act it may be inferred that appellant interpreted the contract requiring him to deliver water at the headgate to the land. As was said in *Mitau* v. *Roddan*, 149 Cal. 1 [84 Pac. 145, 150, 6 L. R. A. (N. S.) 275] : "the law recognizes the practical construction of a contract as the best evidence of what was intended by its provisions".

We believe the testimony offered by respondents was properly received as it illuminated the circumstances surrounding the parties and their negotiations and that the verdict of the jury was amply sustained by the evidence.

Finding nothing to justify a reversal, the judgment is affirmed.

Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 6, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 6, 1933.