CATHERINE HENNESSEY *vs.* GRANT CONNOR & wife.

Suffolk. Jan. 13. — March 20, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

If A. advances to B. a sum of money towards the purchase of a house by B., this is a sufficient consideration for a subsequent promise by B. to pay the amount, although the deed was taken in the name of A., as security for the advance; and the debt is not extinguished.

CONTRACT upon the following agreement in writing, dated December 13, 1880, and signed by the plaintiff and the defendant: "We, Hannah and Grant Connor, agree to pay Catherine Hennessey seven hundred and fifty dollars on second mortgage on a house, 58 Northfield Street, owned now by Hannah and Grant Connor. We also agree to give her a tenement, consisting of two attic rooms when vacated; if any disturbance should

arise hereafter, she is to leave in forty-eight hours, and we agree to pay her five dollars a month until such time as she shall receive the principal." Answer: 1. A general denial. 2. Want of consideration.

Trial in the Superior Court, before *Bacon*, J., who reported the case for the determination of this court, in substance as follows:

It appeared in evidence that, in 1871, the plaintiff took a deed of a certain house and parcel of land on Northfield Street, in Boston, in her own name; that for about a year after the purchase the defendants occupied a portion of the house, collected the rents for the remainder, paid all bills connected with the estate, but paid over to the plaintiff no rent for the part occupied by them, and no part of the rents collected; that, after about a year's occupancy of the house, the defendants temporarily removed from the State, and the plaintiff then took possession of the house, occupied a part thereof, collected rent for the balance, and paid taxes and all other bills connected with the estate; and that at the time of said purchase there existed certain incumbrances thereon, one of which was a mortgage, subsequently assigned to Daniel Simpson, and by him foreclosed. At the time of the purchase of the said estate, of the $1000 cash paid therefor $900 was contributed by the plaintiff, and $100 was contributed by the defendants. It was contended by the plaintiff at the trial that this amount of $900 was a loan to the defendants to enable them to purchase the house in question, upon which loan only the sum of $150 had been repaid to the plaintiff, and that the agreement in question was given in consideration of this loan. The defendants denied this, and contended that the amount of $900 was paid by the plaintiff on account of the purchase of the estate, that the $150 was a loan from them to the plaintiff, and that the agreement was unwillingly given by the defendant, Hannah Connor, at the direction of her husband, for the purpose of quieting her mother, the plaintiff; and that her husband, the other defendant, Grant Connor, signed the instrument for the same purpose.

The plaintiff testified that some time in 1871 she was solicited by one of her other daughters, Nellie, to advance to the defendants the sum of $900, in order to enable the defendants to make

up, together with $100 they had, the sum of $1000, with which to purchase the house in question; that she did not see the house until after the conveyance to her hereinafter referred to; that she went with the defendants to the office of a lawyer; that she there said she wanted some security for her money, and the defendant Grant Connor said, "Put her name in the deed;" that she was unable to read and write; that she gave her bank-book to the defendant, who went out and got the money; that the defendants immediately entered into possession of the premises, and continued in possession thereof for more than a year, collecting all the rents, but making no return thereof to the plaintiff; that, after about a year's occupation of the premises, the defendant Grant Connor secured employment in another State and removed thereto with his wife, and that the plaintiff thereafter took possession of the said premises, collected the rents, ejected non-paying tenants, and paid all bills, including interest on the mortgage, taxes, and water rates; that she remained in possession of the house until after the foreclosure of the mortgage by Simpson, and never accounted to the defendants for the amounts so collected; that the defendants had only paid her back the sum of $150, and that both the defendants had many times promised her that they would pay her back the amount they owed her; that at no time during the entire period did she know or believe that she owned the house, or that her name was mentioned in the deed, except as security for the money she had lent the defendants; and that she had knowledge that the said mortgage was to be foreclosed before it was foreclosed.

Nellie Hennessey, a daughter of the plaintiff and a sister of the defendant Hannah Connor, called by the plaintiff, testified that at and before the time of said purchase of the house she lived with and worked for the defendant Hannah Connor; that Hannah was obliged to remove from the house she then occupied, and requested the witness to search for a house for the defendants; that the defendants were then keeping boarders and needed a large house, and had only a limited time for removal; that the witness did search, but was unable to find any to rent, but found this house for sale, and so reported to the defendants; that the defendants had only $100, and were unable

to raise the sum of $1000, needed to complete the purchase; that Hannah then requested the witness to urge her mother to lend the balance, $900, to the defendants; that the witness did so request her mother, and her mother complied; that for about a year after the purchase she worked for the defendants in said house; that she never heard either the plaintiff or the defendants say that the house was the plaintiff's, but that, on the contrary, the plaintiff had always claimed the house to be the property of the defendants, and she had many times heard both the defendants claim the house to be theirs, and many times heard the defendants say that they borrowed the money from the plaintiff to purchase it, and had heard them promise to repay it.

This witness further testified that the agreement declared on was written by her; that previously to December 10, 1880, and after the purchase of the premises by the defendants at the foreclosure sale above referred to, the defendants had served upon her mother a notice to quit and deliver up the part of the house she occupied; that on December 10, 1880, she, together with John J. O'Driscoll, called upon the defendants in her mother's behalf; that the terms of the settlement were then arranged; and that, three days later, she together with O'Driscoll went to the defendants' house, where, after some conversation, she wrote at the dictation of O'Driscoll the agreement in question, which was signed by all the parties.

Mrs. O'Driscoll, a daughter of the defendants, testified that, upon the return of the defendants to this State, Hannah notified her that she must either pay one dollar and a half a week room rent or leave the house. She also testified that she had heard both the defendants and the plaintiff say many times before the foreclosure that the house belonged to the defendants, and never had heard it said that it belonged to the plaintiff; that she had heard the defendants speak of having borrowed the money of the plaintiff, and had heard them promise to repay it.

Other witnesses called on behalf of the plaintiff testified that, at various times between 1871 and the date of the foreclosure, the defendants had asserted that Hannah Connor owned the house.

The plaintiff also introduced evidence tending to show that, before the beginning of the suit, a demand had been made on

the defendants for a second mortgage, and that the defendants had refused to comply with the demand.

This was all the testimony offered by the plaintiff.

Hannah Connor testified in her own behalf that she was a daughter of the plaintiff; that in 1871 she was obliged to remove from the premises then occupied by her, and in her search for a place to which to remove she heard that the premises above referred to were for sale; that after some negotiations with her mother, her husband informed her that her mother was willing to buy the house, and if at any time she should pay her mother the amount of money paid in by the plaintiff, she, Hannah, could have the house; that the purchase was then made by her husband and her mother, and she removed to the house and occupied it about one year; that afterwards the plaintiff occupied part of the house with her family, and her married daughter's family, and rented the remainder; that no rent was ever paid to any person for such occupancy; that the plaintiff's name was and is on the front door of the house; that in no way had the defendants, or either of them, since one year after the purchase, received any rents or profits from the house, or in any way been recognized by the plaintiff as owners of the property; that ever since the purchase of the premises by the defendants the plaintiff had endeavored to control and interfere with the defendants' tenants, claiming ownership in the property; that after the foreclosure of the mortgage and the purchase of the property by Hannah, the plaintiff interfered to such an extent that it became necessary to give her legal notice to quit the premises; that to please her husband, who insisted upon her signing it, although she expressed her unwillingness to do so, she signed the agreement declared on; and that her mother asserted that she, the plaintiff, owned the house, and that the witness "did not own a stick nor a stone in it."

Grant Connor testified in his own behalf that he went to the plaintiff in 1871 and asked her to advance the sum of $900 with which to purchase the house above referred to; that she refused to advance the money without security, and that, as he had no security to give, the premises were purchased for her in her name; that he did not take the bank-book or have the money, but that the bank-book was given to the person of whom the

house was bought, and that he went out of the office where the deeds were being passed and returned with the money; (the records of the bank showed that the book had been transferred by the plaintiff to the person of whom the house was bought, and that some time afterwards the money was drawn by him;) that the deed was made out to the plaintiff, and he paid the sum of $100 to make up the amount to be paid on the house, and employed and paid an attorney for examining the title; that the plaintiff always asserted that she owned the house, and that neither of the defendants owned any part of the same; that the plaintiff had said that, if Hannah was able to pay her back the sum she had advanced, she might have the house; that he signed the document "just to keep the old woman [the plaintiff] quiet;" and that his wife signed it because he made her.

The defendants asked the judge to rule that, upon all the evidence, there was no legal consideration for the contract declared on. The judge refused so to rule, and instructed the jury as follows:

"It is necessary that there should be a good consideration for every contract. If a contract is without it, it is a mere naked agreement, and as such is void. The consideration of an agreement may be one of several things, and in some cases a moral consideration is sufficient. In this case, if the jury believe that the plaintiff lent to the defendants a sum of money upon which there was a balance unpaid at the time the agreement was signed, that would be a sufficient consideration to support the instrument. If the jury should believe that the greater part of the purchase money was contributed by the plaintiff, and the defendants furnished the other part, and with it the house in question was bought by Connor for his wife, the other defendant, but the deed was, with the consent of all parties, made to the plaintiff, this would be a good consideration for a promise by the defendants to repay to the plaintiff the amount so furnished by her. So, if the plaintiff advanced the money to the defendants to enable them to purchase the house, and the plaintiff took the title for the use and benefit of her daughter, that would be a sufficient consideration for the promise. If the plaintiff did not know that the estate had been conveyed to her, the said plaintiff, but believed that the deed was made to the

defendants, it will not alter the case. If you believe that the plaintiff took the property with the agreement that the defend-ants should repay her, this would be a trust upon her part; and if you find such a trust, that would be a sufficient consideration for the agreement. The conduct of the parties, how the taxes were paid, who made repairs, who occupied the premises, who collected the rents, and what the disposition of the rents was, — all these are facts for your consideration as to whether such a trust was the fact in this case."

The jury returned a verdict for the plaintiff; and the judge reported the case for the determination of this court.

*P. West,* for the defendants.

*C. F. Paige,* for the plaintiff.

W. ALLEN, J. If the $900 advanced by the plaintiff towards the purchase of the place was a loan by the plaintiff to the defendants to enable them to make the purchase, a debt was created from the defendants to the plaintiff which was a suffi-cient consideration for the promise declared on, although the deed was taken in the name of the plaintiff as security for the debt; the plaintiff held the land as security, and the debt was not extinguished. *Campbell* v. *Dearborn,* 109 Mass. 130. *McDo-nough* v. *Squire,* 111 Mass. 217. *McDonough* v. *O'Niel,* 113 Mass. 92. The instructions given were correct.

*Judgment on the verdict.*