ARTHUR U. HUTCHINGS *vs.* ANNIE A. CLERK & another.

Essex.   November 13, 1916. — January 5, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Jurisdiction,* To redeem from equitable mortgage, To enforce resulting trust. *Trust,* Resulting.

In a suit in equity against a husband and wife to establish a resulting trust for the benefit of the plaintiff in certain real estate purchased by the defendant wife at a sale on an execution against the plaintiff's wife of property belonging equitably to the plaintiff, all of the evidence was not reported, but on findings of the master, warranted by the evidence reported, it appeared that the defendant husband, who in whatever he did in the transactions with the plaintiff represented his wife with her approval and subsequent ratification, agreed that he would attend the execution sale and buy the property for the plaintiff "and hold it in his name for the plaintiff," that, after the property had been purchased in the name of the defendant wife, it was necessary in order to make a good title to procure a release from the plaintiff and that the plaintiff executed such a release to the defendant wife without receiving any consideration and understanding that "he was doing it in consequence of said agreement," and there was evidence that the money paid by the defendant wife for the purchase of the property at the execution sale was furnished by the plaintiff after having been

borrowed by the plaintiff from the defendant husband for the express purpose of paying the purchase money at the execution sale. It appeared that the plaintiff did not know until long after the execution sale that the property had been bought by the defendant wife instead of by the defendant husband for the plaintiff's benefit. *Held*, that the defendant wife took title to the real estate by way of equitable mortgage or in trust for the benefit of the plaintiff, and that the plaintiff was entitled to a conveyance of the property upon paying to such defendant what should appear to be due to her upon an accounting.

BILL IN EQUITY, filed in the Superior Court on March 18, 1913, as described in the opinion, praying, among other things, that the "plaintiff be decreed to have the right and to be entitled to have conveyed to him said parcel of land upon the westerly side of said Main Street [in Topsfield] and said undivided two thirds interest in said parcel upon said Prospect Street upon the payment by said plaintiff to said defendants of such sums of money as said defendants have expended on and for the account of said plaintiff," and that a certain deed of release from the "plaintiff to said defendant Annie A. Clerk be declared null and void and cancelled."

The case came on to be heard upon the pleadings, a master's report and supplementary report and the exceptions thereto before *Hall*, J., who ordered a decree overruling the exceptions to the master's report and confirming that report. By agreement of the parties he reserved and reported the case for determination by this court, such decree to be entered as justice and equity should require.

*R. C. Pingree*, (*J. J. Ryan* with him,) for the plaintiff.

*S. Parsons*, (*D. N. Crowley* with him,) for the defendants.

CROSBY, J. This is a bill in equity brought against the defendants, who are husband and wife, to establish a resulting trust in favor of the plaintiff in certain parcels of real estate, for an accounting for rents and profits, and for a conveyance of the real estate to the plaintiff upon payment of whatever is due from the plaintiff to the defendants.

The case comes here upon a reservation made by a judge of the Superior Court, who ordered a decree to be entered overruling the exceptions to the master's report and confirming the report.

The lands in question are situated in Topsfield. One parcel consists of an undivided two thirds interest in a lot on Prospect Street, and the other two parcels are situated respectively on the east and west side of Main Street. The real estate was owned by

the plaintiff's mother at the date of her death, and afterwards was conveyed to Emily A. Hutchings, the plaintiff's wife. The master finds that in April, 1910, one Balch brought an action against the plaintiff's wife and attached the real estate, and afterwards obtained a judgment against her; that the plaintiff, who at that time was not living with his wife, requested the defendant William B. Clerk to lend his wife money to pay her obligation; that Clerk agreed to lend her $1,000 upon a mortgage of all the real estate; and that this offer was refused by Mrs. Hutchings.

There was evidence that, after Mrs. Hutchings refused Clerk's offer to lend her $1,000, the plaintiff went again to Clerk and asked him if he would lend him (the plaintiff) money to take up a mortgage held by Balch, and also to pay the claim of Balch against his wife upon which suit had been brought; that Clerk told him he would lend him (the plaintiff) the necessary money, and that as the plaintiff did not want to hold the property in his own name on account of his unpleasant relations with his wife, Clerk agreed that he would attend the execution sale and buy the property for him and that they afterwards would arrange some method of holding it for the plaintiff; that the plaintiff on April 29, 1910, gave to the defendant William B. Clerk a mortgage of all his personal property to secure a promissory note wherein he promised to pay Clerk $1,600 in one year with interest. There also was evidence that Clerk lent the plaintiff $227.33 to redeem the plaintiff's one third interest in the Prospect Street land which had been conveyed by him to Balch to secure a loan of $200. The master finds that this conveyance in form of a quitclaim deed was a mortgage.

On May 25, 1910, Balch obtained an execution against Mrs. Hutchings, and, on August 5 following, her entire interest in the real estate on Main Street and Prospect Street was sold under the execution and was purchased by the defendant Annie A. Clerk, the wife of the defendant, William B. Clerk, for $641.

The master finds that "In the transactions out of which this suit has arisen, Mr. Clerk represented his wife, and whatever he did and said in his dealings with the plaintiff she approved and ratified. It appeared that Mrs. Clerk had no personal dealings with the defendant" [plaintiff].

The master further finds that "the plaintiff asked Clerk if he would loan him sufficient money to buy said property if it should

be sold as a result of Balch's action against Mrs. Hutchings. Clerk agreed to loan him whatever money might be necessary for that purpose, and the chattel mortgage . . . was given to secure the repayment to Clerk of whatever money the latter might expend in making such purchase; that . . . it was also agreed by them that Clerk should attend the sale, buy the property for the plaintiff, and hold it in his name for the plaintiff." Mrs. Hutchings' interest in all of said property was sold to Mrs. Clerk for $641 and paid for with money belonging to her. The plaintiff did not know until long afterwards that the property had been bought by Mrs. Clerk.

After the property had been bid off in the name of Mrs. Clerk it is recited in the report that "In order to make a good title it was necessary to procure a release from the plaintiff. Clerk told him that some paper was necessary and sent him to Mr. Crowley who drew a release to Mrs. Clerk and the plaintiff executed it."

The master finds that no consideration was given to the plaintiff for the release; and also finds as follows: "Methods of holding the property for the benefit of the plaintiff had also been discussed by him and Clerk before said sale and Clerk told the plaintiff that it might be necessary for the latter to release to Clerk his interest in the property to protect the title, and the plaintiff agreed with Clerk that he would execute a release whenever the latter should desire it. I find that when the plaintiff gave the aforesaid release to Mrs. Clerk he understood he was doing it in consequence of said agreement."

Upon the foregoing findings, and others made by the master which it is unnecessary to recite in detail, and which findings we cannot determine to be plainly wrong, the defendant Annie A. Clerk took title to the real estate by way of equitable mortgage or in trust for the benefit of the plaintiff, and he is entitled to a conveyance of the property upon paying to her what shall appear to be due upon an accounting. *Burns* v. *Hunnewell,* 217 Mass. 106. *Holbrook* v. *Brown,* 214 Mass. 542. *Clark* v. *Seagraves,* 186 Mass. 430. *Potter* v. *Kimball,* 186 Mass. 120.

The master's finding, that the plaintiff borrowed from the defendant $1,600 for the express purpose of providing for the payment of the purchase price of the real estate at the execution sale, is evidence that the consideration was furnished by the plaintiff.

*Howe* v. *Howe,* 199 Mass. 598. *Hennessey* v. *Connor,* 139 Mass. 120. *McDonough* v. *O'Niel,* 113 Mass. 92. *Campbell* v. *Dearborn,* 109 Mass. 130.

The cases relied on by the defendant which hold that a resulting trust in land cannot be established in favor of one who does not · furnish the purchase price, are not applicable to the case at bar. *Kennerson* v. *Nash,* 208 Mass. 393. *Bourke* v. *Callanan,* 160 Mass. 195. *Fickett* v. *Durham,* 109 Mass. 419. *Barnard* v. *Jewett,* 97 Mass. 87.

All the evidence is not reported, but, so far as it is made a part of the report and the supplemental report, it tends to support the findings to which it is applicable, and, as it does not appear that the findings are plainly wrong, the exceptions must be overruled.

It follows from what has been said that a final decree should be entered (1) affirming the interlocutory decree overruling the exceptions to the master's report and confirming that report; (2) directing the defendants to account for any and all sums received from all the real estate including the proceeds of the parcel sold; (3) directing the defendants to convey to the plaintiff by proper deed all their title and interest in the real estate described in the bill and now standing in their names or the name of either, upon the payment by the plaintiff to the defendants of the amount due them; and (4) that the plaintiff recover costs of suit; the details of the decree to be settled in the Superior Court.

*So ordered.*