ANDERSON, APPELLANT, *v.* McCLENATHAN, EXECUTRIX, RESPONDENT.

(No. 4,636.)

(Submitted February 1, 1922.  Decided February 27, 1922.) -

[205 Pac. 230.]

*Real Property — Life Estate — Voluntary Payment of Taxes by Remainderman Before Due not Recoverable from Representative of Life Tenant.*

1. Taxes paid by a remainderman three days before they became delinquent to avoid the penalty provided for nonpayment, *held* to have been paid voluntarily, and therefore not recoverable in an action against the representative of the estate.

*Appeal from District Court, Gallatin County; B. B. Law, Judge.*

---

On duty of life tenant to pay taxes, see notes in 114 Am. St. Rep. 448; Ann. Cas. 1917B, 944; 32 L. R. A. 744; 17 A. L. R. 1384.

ACTION by Ethylin E. Anderson against Violet G. Mc-
Clenathan, executrix of the last will and testament of Lydia
G. Briggs, deceased. Judgment for defendant on demurrer
and plaintiff appeals. Affirmed.

*Mr. W. R. C. Stewart* and *Mr. George Y. Patten,* for Ap-
pellant, submitted a brief; *Mr. Patten* argued the cause
orally.

It is elementary law that the life tenant must pay the
taxes and other charges on the property during the continu-
ance of the life tenancy. (Sec. 4535, Rev. Codes.) Accord-
ingly, the life tenant is required to pay all taxes which
become a lien during the continuance of the life estate; and
the remainderman may sue for and recover any taxes paid
by him which became a lien during such life tenancy. (16
Cyc. 632–634; *Abernathy* v. *Orton,* 42 Or. 437, 95 Am. St.
Rep. 774, 71 Pac. 327; *Ussery* v. *Sweet,* 137 Ark. 140, 208
S. W. 600; *St. Paul Trust Co.* v. *Mintzer,* 65 Minn. 124,
60 Am. St. Rep. 444, 32 L. R. A. 756, 67 N. W. 657;
*De Freese* v. *Lake,* 109 Mich. 415, 63 Am. St. Rep. 584, 32
L. R. A. 744, 67 N. W. 505; *Husten* v. *Tribbitts,* 171 Ill. 547,
63 Am. St. Rep. 275, 49 N. E. 711.)

The argument that there was a voluntary payment in this
case overlooks these important considerations: It was the at-
taching of the lien itself, which occurred on March 4, 1918,
rather than letting the taxes become delinquent, which gave
rise to the obligation which it is the purpose of this action
to enforce. In reason, the becoming delinquent of the taxes
is not a material element at all. But even if it could be said,
in ordinary cases, that the remainderman should have waited
until the taxes had become delinquent to avoid his payment
thereof being voluntary, that question does not arise here, be-
cause of the allegation that the respondent had refused to pay
the taxes prior to the time they were paid by appellant. (*Mc-
Caull-Dinsmore Co.* v. *Jackson,* 57 Mont. 555, 189 Pac. 771.)

There is, however, no reason for fixing the time when the

taxes became delinquent at the time to which appellant must have waited before protecting her estate in remainder. The taxes were no more a lien after delinquency, and did not any more menace appellant's title to the property, after November 30, 1918, than before ,that date, and after March 4, 1918. As well might it be said that respondent should have waited until the property was sold for taxes. Indeed, had she waited that long, it might even then, with equal reason, be said that she should have waited until the purchaser at the tax sale made application for a tax deed, as her estate would not be lost until a tax deed was issued. It would be just as reasonable to make the latter contentions, because, under the theory of the respondent, she could have waited until a tax deed was about to issue before clearing the title of these taxes, and then protect her estate in remainder. In logic as well as under the authorities, inasmuch as the lien of the taxes attached during the life tenancy, there was a default on the part of respondent as executrix as soon as the estate in remainder vested with these taxes a lien thereon or at least as soon thereafter as she had opportunity to pay the taxes and refused to do so.

*Mr. H. A. Bolinger,* for Respondent, submitted a brief and argued the cause orally.

The respondent contends that the payment by the appellant was wholly voluntary on her part, and she has no cause of action against the respondent to recover the amount of any taxes paid by her. (*Huddleson* v. *Washington,* 136 Cal. 514, 69 Pac. 146.) In that case the remainderman had the property assessed to herself, while in the case at bar there is no allegation in the complaint as to who the property was assessed to. In that case the court said: "A payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress, imposed upon it by the party to whom the money is paid," and also that "no man can be a debtor for money paid, unless it

was at his request"; also that it was "a well-settled principle of law that one person cannot, without authority, pay the debt of another, and charge the amount so paid against the party for whose benefit the payment was made." The following cases bear upon the question of voluntary payment: *McGlew* v. *McDade,* 146 Cal. 553, 80 Pac. 695; *McGee* v. *City of San Jose,* 68 Cal. 91, 8 Pac. 641; *Homestead Co.* v. *Valley Railroad,* 17 Wall. 153, 167, 21 L. Ed. 622 [see, also, Rose's U. S. Notes]; *Standard Box Co.* v. *Mutual Biscuit Co.,* 16 Cal. App. 746, 103 Pac. 938, 943; *Keifer* v. *Myers,* 14 Cal App. 338, 111 Pac. 1038, 1039.

MR. JUSTICE COOPER delivered the opinion of the court.

Lafayette S. Briggs died in Gallatin county November 10, 1918. He left a will in which he made specific bequests to be paid upon his death, and devised and bequeathed the income from the rest of his property to his wife, Lydia G. Briggs, during her lifetime. The estate consisted of a farm and other property. Under the terms of his will, upon his death, possession, management and control of all the remaining property passed to her as life tenant. The rents, issues and profits in their entirety were enjoyed by her until September 16, 1918, the day of her death, when the plaintiff, the sister of Mr. Briggs, under the will of her brother became the sole owner thereof, and she has since enjoyed its possession, management, and the profits derived therefrom. By section 4628 of the Revised Codes of 1907 the taxes became a lien upon all the property of the estate and an encumbrance thereon from the first Monday in March, which, if not paid at 6 o'clock P. M. November 30, would become delinquent, and ten per cent added thereto as a penalty for nonpayment. (Sec. 2622.)

The complaint alleges that the profits derived by the widow from the property were greatly in excess of the taxes levied and imposed thereon annually; that the defendant, as executrix of the last will and testament of Lydia G. Briggs, re-

fused and neglected to pay the taxes for the year 1918, and, in order to avoid the penalty provided by law for nonpayment, she (the plaintiff) paid the sum of $740.52 to the treasurer of Gallatin county as taxes for the current year. On May 7, 1919, she presented to the defendant in her representative capacity a claim in the amount named, which was disallowed. On the following day this action was commenced. A demurrer was filed attacking the complaint upon the ground that it did not state a cause of action. This demurrer the court sustained, and entered the judgment from which the plaintiff appeals.

Upon the ground that the defendant's refusal to pay the taxes upon her demand making it legally necessary for her (the plaintiff) to pay them to save them becoming delinquent, she brought this action.

As between the life tenant and the plaintiff, the general [1] taxes and other annual charges against the estate are to be paid by the former. (Rev. Codes 1907, sec. 4534.) The annual levy of taxes is not made until the board of county commissioners meets on the first Monday in August. The exact amount the taxpayer is to pay is not known until the county clerk has received from the state board of equalization a statement of the changes made by it in the assessment-book of the county or in any assessment contained therein (sec. 2607), and has entered in a separate money column in the assessment-book the total amount of the taxes and the columns of total value of property in the county as corrected by direction of the state board of equalization (section 2608); and, on or before the first Monday of October, the county clerk has delivered a copy of the "corrected assessment-book" to the county treasurer, supplemented by his affidavit reciting that he has corrected it, made it conform to the requirements of the county and state boards of equalization, reckoned the respective sums due as taxes, and "added up the columns of valuation, taxes and averages." Section 2611 requires him also, on delivering the "Duplicate Assess-

ment-Book" to the treasurer, to charge the latter with the amount of taxes levied; and section 2612, that he shall verify by affidavit *all* the statements made by him under the provisions of ·Chapter 7. On the third·Monday in December the county treasurer must compare the duplicate with the original assessment-book, and mark "paid" in the latter every item so marked in the former (section 2623), and deliver to the county clerk a complete list of all persons and property then owing taxes (section 2624). On or before the last Monday of each year the county clerk must publish the delinquent list (section 2629) once a week for three successive weeks (section 2631), designating the time and place of sale (section 2632). The date of sale must not be less than twenty-one nor more than twenty-eight days from the first publication (section 2633), so that approximately seven weeks must elapse before the property upon which taxes are in default can be sold. Was the payment voluntarily or involuntarily made?

The complaint does not aver in whose name the property was assessed at the time the defendant refused the plaintiff's demand that she pay the taxes. Nor does it, directly or by inference, allege the precise time when her demand was refused. For aught the pleading shows, there may have been various reasons why defendant was not then ready or able to pay them. Yet, had the plaintiff given her the time and opportunity allowed by law, she might have paid the taxes before delinquency, and this litigation would then have been avoided. Here it may be suggested that the same legislative authority which created the lien on the first Monday in March also gave the taxpayer the choice of time and occasion, between receipt by the county treasurer of the "Duplicate Assessment-Book" (section 2609) and 6 o'clock P. M. November 30 (section 2622) to discharge it—a right no less authority can abridge or destroy. So that, the plaintiff having paid the taxes imposed by law upon another, and that, too, before default, there is no showing of duress, as defined by section

4975, nor of such pressing necessity as to make the payment involuntary or under compulsion.

In *Clarke* v. *Dutscher,* 9 Cow. (N. Y.) 674, it was held that money paid with full knowledge of the facts and circumstances, or with means of such knowledge, could not be recovered back upon the ground that the party supposed he was bound in law to pay it, when in truth he was not. "He shall not be permitted to allege his ignorance of law; and it shall be considered a voluntary payment."

In *Forbes* v. *Appleton,* 5 Cush. (Mass.) 115, it was held that a payment of money, in order to prevent the obligee in a bottomry bond from enforcing the same by taking possession of the vessel, was not a compulsory, but a voluntary, payment, which, if the money demanded was not due, did not give the debtor a right of action to recover it back, although he declares at the time of payment that he makes it under coercion, and intends to reclaim the money by action. In its opinion the court remarked that it seemed to be nothing beyond the ordinary case of a voluntary payment of money made to avoid a lawsuit. "The party demanding the money had not the actual possession of the vessel, which was the subject of the bottomry bond, and could not proceed forthwith to levy upon the same, by means of any process in the nature of an execution or warrant of distress."

In *Mayor* v. *Lefferman,* 4 Gill (Md.), 425, 45 Am. Dec. 145, after a careful review of the numerous authorities upon the subject of payments, the court say: "A payment is not to be regarded as compulsory, unless made to emancipate the person or property, from an actual or existing duress, imposed upon it *by the party, to whom the payment is made.*"

In the note to the case last cited (45 Am. Dec. 153) will be found the following: "The rule allowing a party to recover money which he has once paid, on the ground that it was paid under compulsion, is intended only for the relief of those who are entrapped by sudden pressure into making such payments, and who have no other means of escaping an existing

or imminent infringement of their rights of person or property. Where a party has time and opportunity to relieve himself from his predicament without making such a payment, by a resort to ordinary legal methods, but nevertheless pays the money, the payment will be deemed voluntary and he cannot recover'' (citing numerous cases.)   On page 164: ''The tax must also be delinquent, and the collector must have the delinquent list, or other warrant in his hands, so as to have it in his power to make an immediate seizure of goods.''

The authorities clearly mark the distinction, always to be noted, between the cases where the officer, armed with legal process, is about to seize the person or property, and those involving transactions between private persons standing upon their legal rights as between each other, neither person nor property being in imminent danger of seizure or detention. For a full discussion of the subject, see the extensive note following the case of *New Orleans etc. Co.* v. *Louisiana etc. Co.,* 94 Am. St. Rep. 395. Under the title ''Payment,'' in 22 Am. & Eng. Ency. of Law, page 611, this will be found: ''The payment of a tax before it has become delinquent and enforceable, in order merely to secure rebates or discounts, or to escape penalties for delinquency, is voluntary.''

The payment by plaintiff on November 27 of taxes which could not become delinquent until 6 o'clock P. M. November 30 was made to anticipate a penalty, and to make the defendant her debtor upon a claim which could not mature for three days to come, and was therefore voluntarily made.

There being nothing harsh or unjust in the application of the rule established, the judgment appealed from is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY and GALEN concur.

MR. JUSTICE REYNOLDS, being absent, takes no part in the foregoing decision.