HAZEL E. McDONALD *vs.* THOMAS J. CONWAY.

Hampden.    October 8, 1925. — January 12, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Frauds, Statute of. Trust,* Resulting. *Contract,* What constitutes. *Partnership.*

Induced by oral representations and promises by a man who owned land in a city adjoining hers and who had great business experience, a woman, without means and without appreciation of the details involved in carrying through the transaction suggested, signed an agreement subjecting herself to pay a certain amount of money toward the construction of a new street which would pass about ten feet from the two lots, the man promising to advance the money and undertaking to buy for her the entire strip of land between the new street and the lots, telling her that she could pay him the price of the part adjoining her land when she was able, that she could have a period of years for repayment, and could pay interest at five or five and one half per cent. The man, having bought the strip of land, sought to compel the woman to sell her lot to him, refusing to recognize any right on her part in the strip of land. In a suit by her to compel recognition of such right, it was *held*, that, there having been, when the defendant took title to the strip, neither existing indebtedness of the plaintiff to the defendant nor existing confidential relations between them, the statute of frauds, G. L. c. 203, § 1; c. 259, § 1, furnished a complete defence to the suit.

BILL IN EQUITY, filed in the Superior Court on October 7, 1924, and afterwards amended, to enforce alleged rights of the plaintiff in a strip of land and to enjoin the defendant, in whose name the title was, from interfering with that right.

In the Superior Court, the suit was referred to a master. Material findings by the master are described in the opinion. The suit was heard upon the master's report by *Weed*, J., by whose order there was entered a final decree dismissing the bill.    The plaintiff appealed.

The case was submitted on briefs.

*J. B. Ely, W. C. Giles, & W. C. McDonough,* for the plaintiff.

*W. G. Brownson,* for the defendant.

WAIT, J.    The plaintiff and the defendant owned adjoining premises whose northerly boundary line extended a distance of about one hundred and sixty-seven feet from Pearl Street Court to Spring Street in Springfield.    Neither lot abutted on Winter Street, a public highway which then ran into but did not cross Pearl Street Place.    Early in 1924, a project was under consideration to extend Winter Street easterly to Spring Street, north of the lots of the plaintiff and defendant, and an agreement had been signed by the defendant and others who described themselves therein as "owners of property abutting on Winter street in said Springfield or property to be benefited by the proposed extension of Winter street to Spring street."    This agreement bound the signers to "contribute to the cost of said extension and improvement an amount equal to ten ($10.00) dollars per front foot of our respective properties now facing on Winter street, or upon the proposed extension thereof."    If accepted by the city, the sums paid were to be in lieu of any betterment assessment.    The agreement was not to be effective unless work on the improvement began before August 1, 1924.    It was dated January 18, 1924.    The defendant wished to have the plaintiff execute this agreement and took it to her in January or February, 1924, before the exact location of the proposed extension had been fixed and before any one knew whether it would or would not touch the land of the plaintiff; and, to induce her to sign, told her that in order to secure the extension it was necessary for her to join in the agreement, that her property, which would front on the extension, would be benefited, and that payment could be postponed, in part, for two years.

The defendant further said that there might be a strip of land about ten feet wide between their northerly property line and the southerly side line of the extension, that he wished to buy what lay between his line and the proposed street, and might be able to buy at better advantage if he bought the whole strip along her line as well as his, that he would buy the whole and buy for the plaintiff the part which abutted on her land. She said she had no means to pay for the assessment or for the additional land. The defendant said he would take care of the purchase price for the entire strip and she could pay him the price of the part adjoining her land when she was able; she could have a period of years for repayment and could pay interest at five or five and one half per cent. He told her the strip adjoining her land would probably cost $800 or $900 and the assessment would be about $480. Relying on these statements and promises and induced by them, the plaintiff signed the agreement in January or February, 1924.

The defendant had not then negotiated in any way for the purchase and did not know at what price or on what terms he could buy. Nothing was said in regard to the time at which the portion purchased should be conveyed, or whether the amount advanced as purchase money should be secured in any way.

The plaintiff and her husband did not appreciate the details involved in carrying through the transaction suggested, as the defendant, a man of greater business experience, knew.

The defendant in July, after the location had been fixed and it was known that a strip of land about ten feet wide would be left between the new street and the northerly line of the lots, secured a contract for purchase of the entire strip. He told the plaintiff's husband that he would buy the part adjoining the plaintiff's land for her and that it would cost when graded about $800. He obtained his deed about August 21, 1924, paying therefor $2,000 and the assessment upon the whole strip, about $1,700 more. Late in August he told the plaintiff that he had bought the entire strip and suggested that she sell him her land on Pearl Street Place. She

said she supposed it was settled that he had bought the strip adjoining her land for her. Early in September the defendant declared he would not turn that land over to her. He made several attempts to induce a sale to himself of the plaintiff's premises, in substance threatening to use the strip so as to annoy her if she did not sell. In October after he had excavated in the strip close to the foundation walls of the plaintiff's house, he was notified that the plaintiff claimed an interest in the strip and that excavation must stop.

The agreement signed by the plaintiff with the defendant and other owners of land affected by the proposed extension of Winter Street was the only writing in existence relating to this transaction. The plaintiff has always been willing to carry out the transaction if she could, but at no time has she been able to do so from her own resources. The only change she has made in her condition since January, 1924, is to affix her signature to the agreement with the city.

The plaintiff brought her bill, claiming that "a resulting trust arose in her favor"; that she is equitable owner "and that if the defendant has any legal title to said property it is in the nature of a security title or that of a mortgagee of land"; and praying that a conveyance to herself be ordered on payment of the amount paid for the parcel for the plaintiff, and for damages. The defendant denied any obligation, and set up the statute of frauds in his answer. The cause was referred to a master who found the facts hereinbefore stated. The plaintiff waived any claim for damages, except for breach of the agreement to purchase for her. The Superior Court confirmed the report and dismissed the bill. The plaintiff appeals.

The statutes of frauds furnish a complete defence to the bill; G. L. c. 259, § 1, bars any action on the alleged contract, G. L. c. 203, § 1, prevents the creation of a valid trust.

An agreement to purchase land and then to convey it in whole or in part to another is "a contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them," G. L. c. 259, § 1; and it is none the less within this statute that the purchaser is, or is alleged to be, an agent for that other. *Collins* v. *Sullivan*, 135 Mass. 461. *Bourke* v.

*Callanan,* 160 Mass. 195. *Tourtillotte* v. *Tourtillotte,* 205 Mass. 547. *Southwick* v. *Spevak,* 252 Mass. 354. Wherever recovery has been permitted upon facts similar to those in the case now before us, it has been because either a constructive trust arising from the fiduciary relations of the parties, or a resulting trust arising from payment with money or property then belonging to the alleged *cestui,* has been created at the moment of the acquisition of the legal title by the alleged wrongdoer. The cases cited by the plaintiff do not support her contention that such a trust was created in this instance. In *Rolikatis* v. *Lovett,* 213 Mass. 545, a relation of attorney and client had existed prior to the promise relied upon. The case does not depart from the rule of law laid down in *Bourke* v. *Callanan, ubi supra,* which it cites as authority.

In *Kendall* v. *Mann,* 11 Allen, 15, where no money passed from the alleged buyer to his alleged agent, the court refused to establish a resulting trust in the absence of very clear proof of a present loan from the agent to the buyer. In *Hutchings* v. *Clerk,* 225 Mass. 483, where the same rule of law is recognized, the case rests upon a finding of fact that the consideration was furnished by the promisee. The fact that a consideration exists does not prevent the statute of frauds from rendering a promise unenforceable. *Bemister* v. *Hedtler,* 249 Mass. 40.

The cases recognize that a trust may arise where no money passes from the would be *cestui* to the purchaser; but they also decide that unless the payment of the purchase money is made as a loan at the moment of payment, no trust will result. *Howe* v. *Howe,* 199 Mass. 598.

In the case before us there was, when the defendant took title, neither an existing indebtedness nor an existing confidential relationship. When he bought, the defendant was neither an agent nor a creditor. It is manifest that he was acting for himself, although in disregard of his promises to the plaintiff.

The suggestion that a partnership in the strip was contemplated does not deserve consideration.

The decision might be rested upon the absence of any

clear agreement in regard to the time of conveyance, the price to be paid, the time of repayment, and the form of security, if any; but we go upon the broader ground here stated, that the statutes of frauds bar the contract and defeat any trust. The case falls within the authorities exemplified by *Southwick* v. *Spevak, supra. Kennerson* v. *Nash*, 208 Mass. 393, *Bourke* v. *Callanan, supra, Fickett* v. *Durham*, 109 Mass. 419, *Barnard* v. *Jewett*, 97 Mass. 87.

The plaintiff has asked that the case be retained for amendment into an action at law to "determine the value of the consideration she has parted with." This motion is denied, but without prejudice, and leave is given to the plaintiff, if so advised, to move in the Superior Court for such amendment. If such application is made within thirty days after the entry of the rescript, and amendment is allowed, the case is to stand for further proceedings. If within said thirty days motion is not made or if such amendment is denied, the decree is affirmed.

*Ordered accordingly.*