McKENZIE, Appellant, *v.* EVANS et al., Respondents.

(No. 7,151.)

(Submitted November 22, 1933.  Decided January 5, 1934.)

[29 Pac. (2d) 657.]

(1)

*Mr. John McKenzie, Jr.*, for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. A. H. Gray*, for Respondent E. J. Lander & Company, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to foreclose a real estate mortgage. In his complaint he alleged the execution and delivery of ten promissory notes dated July 28, 1916, by the defendants Evans, husband and wife, to the defendant Anderson; each of these notes was for the sum of $920, one of them maturing on the twenty-sixth day of July of each of the years 1917 to 1926, both inclusive; that five of the notes, maturing in the years 1920, 1922, 1923, 1924 and 1925, were indorsed in blank by the payee and after an intermediate transfer became the property of the plaintiff. Various payments of interest on these five notes are alleged, the dates and amounts thereof not being here important. Plaintiff further alleged that the defendant Stough was the owner of one or more of the ten notes; the execution, delivery and recording of a real estate mortgage to secure the ten notes; the assignment in writing to the plaintiff

of "that portion of said mortgage represented and evidenced by said five notes."

Plaintiff alleged the giving of a mortgage for $13,000 on the same real estate included in the Anderson mortgage on March 7, 1916, to the defendant E. J. Lander & Co., its recordation on June 2, 1916, and, on information and belief, its nonpayment; that the defendants Evans have failed to pay the taxes for the years 1921, 1922, 1923, 1924 and 1925, and a portion of the taxes for the years 1926 and 1927; that the lien of these taxes was superior to the lien of the defendant Lander & Company's first mortgage; and that plaintiff, to protect his lien on the real estate, paid these taxes to protect and preserve the land from tax sale and tax deed. Some of these payments were alleged to have been made after the taxes were delinquent; others were made after the taxes were due but before any penalty could attach. It is alleged that plaintiff was subrogated to all the rights and interests of the state and county in and to the premises under and by virtue of the payment of the taxes, which sums so paid have not been repaid to plaintiff, and that such taxes, together with interest at eight per cent., became liens in favor of plaintiff against the real estate, which liens are paramount and superior to the lien of the first mortgage owned by the defendant Lander & Company, and that this lien for taxes paid is superior to the liens and interests of all the defendants.

The defendant E. J. Lander & Company answered, admitting many allegations of the complaint not here necessary to be noticed, but denying that plaintiff was subrogated to the rights of the state and county by reason of the payment of the taxes, and denying that plaintiff secured any lien on the mortgaged lands and premises by virtue of the payment of the taxes paramount and superior to the lien of its first mortgage.

Defendant affirmatively alleged that any cause of action for the repayment of taxes made on the various dates as alleged was barred by the provisions of subdivision 3 of section 9031, subdivision 1, of section 9032, and subdivision 1 of section 9030, Revised Codes 1921, as to the payments made prior to the

period of limitation prescribed by these various subdivisions. Defendant further alleged that a second mortgage was executed and delivered to it bearing the same date as its first mortgage; that the second mortgage was foreclosed by it in a judicial proceeding in which the plaintiff herein was one of counsel for the plaintiff in the proceedings, and to which his predecessor in interest was a party; that it proceeded to sale and the defendant Lander & Company became the purchaser at the sale occurring on August 26, 1922; that on October 29, 1923, the defendant company assigned the sheriff's certificate of sale to one Andrew Gilruth, which transaction was negotiated and consummated by plaintiff as the agent of Gilruth, and that by reason of the foreclosure proceedings the rights of plaintiff under the third mortgage were lost and plaintiff estopped from asserting any rights thereunder.

Plaintiff by reply denied the affirmative allegations of the answer and alleged affirmatively that the time for redemption under the second mortgage foreclosure was extended to October 26, 1923, and that on October 16, 1923, plaintiff on behalf of the mortgagors Evans redeemed the property from the foreclosure sale by taking an assignment of the certificate of sale by plaintiff in trust for the mortgagor Evans; that Evans remained in possession up to and including the year 1930, during all of which time the crops grown each year were mortgaged to defendant Lander & Company to secure payments due on its first mortgage.

The cause was tried before the court sitting without a jury. Plaintiff was the only witness. He produced letters passing between himself and Lander & Company, with reference to making a redemption from the foreclosure sale under the second mortgage. These negotiations commenced on May 31, 1923. Plaintiff, as a result of this correspondence, procured an extension of time for a period of sixty days in addition to the statutory period of redemption within which the property might be redeemed, and a reduction in the amount of interest on the purchase price necessary to be paid, from twelve to eight per cent. In the course of this correspondence plaintiff

advised Lander & Company that he proposed to redeem the property for the mortgagor Evans. After the extension had been agreed upon, Lander & Company, in their letter of September 24, 1923, questioned the advisability of the redemption being made, and directed plaintiff's attention to the fact that interest on their first mortgage was past due and a considerable amount of delinquent taxes was then unpaid, and further stated that unless a considerable payment was made on the taxes and the interest on its first mortgage, a foreclosure of it would be brought the next fall and they would require a mortgage on the crops the ensuing year as additional security for past due items. On October 18 following plaintiff wrote the defendant to send their vice-president at Great Falls, Montana, an assignment of the sheriff's certificate of sale in blank. This was transmitted and the agreed amount paid by plaintiff, who caused the name of Gilruth to be inserted in the assignment as assignee.

No sheriff's deed has ever been issued to the premises. Plaintiff advanced his own money to purchase the sheriff's certificate. Gilruth had no interest in the transaction, and was a brother-in-law of plaintiff. The mortgagor Evans at various times repaid to plaintiff the entire sum of money advanced by him to procure the assignment of the certificate of sale from the defendant. On December 1, 1926, plaintiff entered into a written agreement with Evans, wherein he agreed to sell and convey the mortgaged premises to Evans upon performance of the contract by the latter. In this contract Evans agreed to pay the first mortgage to Lander & Company, and to pay the indebtedness then owing, and all money thereafter advanced by plaintiff to him. The contract contained numerous other provisions relative to the farming operations to be conducted during the ensuing years. Evans agreed to pay the taxes on the premises; two-thirds of the crop was to be delivered each year to plaintiff; the title to all crops was to be in the plaintiff until division. The share of the crops delivered to plaintiff was to be applied in payment of the indebtedness owing by Evans to plaintiff.

The trial court made findings of fact including many matters about which there was no issue raised and no conflict in the testimony, and which are therefore unimportant here. In addition the court found that the notes secured by the mortgage sought to be foreclosed, other than the five notes which plaintiff produced at the trial, and the one or more notes owned by the defendant Stough were unaccounted for, and that there was no evidence before the court as to the ownership of these notes. The court further found that the plaintiff procured an assignment of the certificate of sale on October 26, 1923, from Lander & Company to Andrew Gilruth, who had no interest in the certificate, and that the purchase price was paid by the plaintiff. It found that on March 24, 1925, plaintiff redeemed the mortgaged lands from tax sale, and made various other payments of taxes as alleged in the complaint.

The court made conclusions of law to the effect that plaintiff, not being the owner and holder of all the promissory notes included in the Anderson mortgage, could not maintain the action; that by the assignment of the certificate of sale procured by plaintiff, all the right, title and interest of the defendant Evans were acquired by him; that no redemption was made; that the lien of plaintiff's third mortgage was extinguished by the foreclosure sale; that the taxes paid by plaintiff were paid by him as owner of the land, and that he was entitled to no relief. A judgment of dismissal in accordance with the conclusions of law was made and entered. The appeal is from the judgment.

Plaintiff contends the trial court was in error in finding that certain of the notes secured by the mortgage sought to be foreclosed were unaccounted for and concluding therefrom that plaintiff could not maintain this action. He argues that, since Anderson, the original mortgagee, was a party to the foreclosure proceedings, by applying the presumption that a thing once shown to exist continues until the contrary is established, the complaint discloses, prima facie, that all the interested parties were before the court.

8

Defendant assumes the position that the owners of the various notes secured by the mortgage are in the position of joint mortgagees, therefore all of them should be parties plaintiff unless the complaint discloses by appropriate allegations the refusal of the other joint mortgagees to join as plaintiffs, thus making them parties defendant pursuant to section 9083, Revised Codes 1921; to this argument plaintiff responds that any such defect in parties is waived by failure of the defendant to raise the question either by demurrer or answer.

Plaintiff, in support of his contention that the presumption of the continuance of a thing once shown to exist cured any defect of parties, cites the early Minnesota case of *Jaeger* v. *Hartman,* 13 Minn. 55, wherein this presumption was applied to a somewhat similar situation, although the period of time over which the presumption was required to operate is not stated in the opinion. Neither does the court in the statement of the presumption recognize the qualification incorporated in our statute (subd. 32, sec. 10606, Rev. Codes 1921), namely, that a thing once proved to exist continues as long as is usual with things of that nature. (See *Doran* v. *United States B. & L. Assn.,* 94 Mont. 73, 20 Pac. (2d) 835.)

The promissory notes in question were executed in 1916. Thus it will be seen that a period of nearly sixteen years had elapsed since their execution and delivery at the commencement of this action. This species of property is easily transferred. If it was inherent in the nature of a promissory note that once private ownership attached thereto, the relation would continue for any definite period, then the presumption would apply. Duration, however, is not an invariable attribute of the ownership of promissory notes. It cannot be said, as a matter of law, that it is usual with this species of property that once it is shown that A owns a note he will continue to own it for an indefinite period of time. The supreme court of Oregon refused to apply this presumption with reference to the ownership of shares of stock in a bank. (*Sargent* v. *Waterbury,* 83 Or. 159, 161 Pac. 443, 163 Pac. 416.) No allegation appears in the complaint as to the ownership of the

remaining notes. We therefore conclude that this presumption would not supply the deficiency in parties.

But would the holders of the various notes be joint mortgagees, as contended for by defendant? Many courts hold, and indeed it is said to be the prevailing rule, that where notes payable at different dates secured by the same mortgage are assigned by the mortgagee to different persons, either at the same or different times, and either with or without an accompanying assignment of the mortgage, the holders of successive notes are regarded as being in the same situation as holders of successive mortgages upon the same lands. Their equities as among themselves, and their rights to enforce the security of the mortgage are not equal. They are entitled to priority in the mortgage security of their respective notes according to the order of time in which such notes become due and payable. (3 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1201, p. 2864.) Other courts, upon the same conditions, hold there is no preference or priority whatever among the various assignees, and that all of them are entitled, as among themselves, to share *pro rata* in the security of the mortgage and the proceeds of the mortgaged premises, if there is not sufficient to pay all in full. (Pomeroy's Equity Jurisprudence, 4th ed., sec. 1201, p. 2865.) But the operation of either rule may be changed or controlled by express provisions contained in the mortgage itself (see sec. 1201, Pomeroy's Eq. Jur., supra) and by the provisions of the various assignments.

The record in this case contains only fragments of the mortgage and the assignment to the plaintiff; it makes no mention of any assignment of the mortgage to parties other than the plaintiff. We are, therefore, in no position at this time to determine which of these rules should be adopted in this state in the absence of contract, as we are not advised as to whether or not contracts exist disposing of this question. If we were to adopt either the rule stated by Mr. Pomeroy to be the prevailing one, or if the same result was attained by contract, manifestly the holders of other notes would not be proper parties plaintiff. (Pomeroy's Code Remedies, 5th ed., 378; *Ran-*

*kin* v. *Major,* 9 Iowa, 297.) If the contrary rule were adopted, then doubtless there would be merit in the contention of the defendant.

It is true that ordinary defects in parties, unless raised by demurrer or answer, are waived, to which there is one exception, namely, if the controversy cannot be completely determined in the absence of persons not made parties and the rights of such persons will be prejudiced by a judgment rendered in their absence. (Pomeroy's Code Remedies, 5th ed., sec. 1888, p. 307; *Mitau* v. *Roddan,* 149 Cal. 1, 84 Pac. 145, 6 L. R. A. (n. s.) 275.)

Section 9090, Revised Codes 1921, provides in part: "But when a complete determination of the controversy cannot be had without the presence of other parties the court must order them to be brought in." If the necessary parties to a full determination of the controversy are not before the court it is the duty of the court on its own motion to order them brought in, and this although the defendant in the action may have omitted to raise the objection of defect of parties by demurrer or answer. (*Mitau* v. *Roddan,* supra; *Winter* v. *McMillan,* 87 Cal. 256, 25 Pac. 407, 22 Am. St. Rep. 243; *Wheeler* v. *Lack,* 37 Or. 238, 61 Pac. 849.) The failure of the trial court so to bring in the necessary parties is fatal to the judgment. (*Mitau* v. *Roddan,* supra; *Winter* v. *McMillan,* supra; Pomeroy's Code Remedies, 4th ed., 316.)

In order for the trial court completely to determine the rights of the plaintiff under the mortgage, as against the other owners of the notes secured by the same mortgage, it was necessary that such owners be before the court, so that the proceeds of the property, when sold, should be properly applied in payment of the various notes according to the equities of the respective owners. It appeared from the testimony on the trial of the case that plaintiff knew nothing about who might be the owners of these notes other than his own.

The trial court did not commit error in refusing to permit plaintiff to maintain the action in so far as the foreclosure of his mortgage is concerned, but when it appeared from either

pleading or proof that other parties were necessary to the complete determination of the controversy, the court should have ordered such additional parties to be brought in—on its own motion, if necessary—and should not have proceeded to a dismissal of the case until a reasonable opportunity had been afforded plaintiff to accomplish that purpose, and if plaintiff failed or neglected to bring in such parties within a reasonable time, then a dismissal would have been proper.

As the law does not contemplate either impossible or absurd situations, if it should appear that the plaintiff cannot ascertain the identity of the other owners of the notes, and the court not being otherwise in the possession of this knowledge, then it should permit the plaintiff to proceed with the foreclosure of the mortgage as against the parties before it, but without prejudice to the rights of the unknown owners of the remaining notes.

Plaintiff contends the court erred in concluding that, when he secured the assignment of the sheriff's certificate of sale, he did not redeem the land and premises but became the owner of all the right, title and interest of the mortgagor, and that the lien of plaintiff's third mortgage was extinguished. True, plaintiff did not strictly comply with the statutory requirement in order to effect a redemption; but the evidence all tends to establish the fact that he secured the assignment of the certificate of sale as security for debts owing to him by the mortgagor Evans. Evans repaid him the money advanced and by written contract plaintiff agreed to convey the premises to Evans whenever he paid plaintiff the amount of indebtedness owing to him.

An equitable mortgage is created by assignment of a sheriff's deed or a certificate of sale to one advancing money for redemption of lands from judicial sale under an agreement to reconvey to the debtor on repayment. (Jones on Mortgages, 8th ed., sec. 228; *Lounsburg* v. *Norton,* 59 Conn. 170, 22 Atl. 153; *Trogdon* v. *Trogdon,* 164 Ill. 144, 45 N. E. 575; *Byers* v. *Johnson,* 89 Iowa, 278, 56 N. W. 449; *Staughton* v. *Simpson,* 69 Minn. 314, 72 N. W. 126; *Sweetzer's Appeal,* 71 Pa. St.

264.) It is also sometimes said that under such a state of facts the person advancing the money to procure the assignment of a sheriff's certificate of sale or bidding in the property for the benefit of the mortgagor at foreclosure sale, holds the property as the trustee of a resulting trust. (*Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714; *Hutchings* v. *Clerk,* 225 Mass. 483, 114 N. E. 746.)

Defendant contends that there could be no resulting trust pursuant to the provisions of section 6785, Revised Codes 1921, since Evans did not pay the money to plaintiff until long after the transaction had occurred. This statutory provision does not require the person for whose benefit the conveyance is made to pay the money. It must be paid by him or on his behalf. (*Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127; *Marcellus* v. *Wright,* supra.) The money under the undisputed evidence was advanced for and on behalf of the mortgagor Evans.

The trial court was in error in holding that by the transaction whereby plaintiff acquired an assignment of the sheriff's certificate of sale he became the absolute owner of the property, as he only acquired it as an equitable mortgagee and held it in trust subject to the right of the mortgagor Evans to require a conveyance of the property upon the payment of the indebtedness which he owed to plaintiff.

The remaining question presented by this appeal is: Was the plaintiff by virtue of the payment of taxes subrogated to the lien of the state and county, and thereby entitled to assert the same as being prior to defendant Lander & Company's first mortgage?

Plaintiff in this case paid the taxes to the county treasurer of the county in which the lands and premises were located. No attempt was made by plaintiff to secure an assignment of the tax sale certificate from the county, as he might have done pursuant to the provisions of sections 2206 and 2207, Revised Codes 1921, whereby an assignment of all the county's and state's right, title and interest would have been assigned to him.

Although there is some doubt cast upon the proposition in early cases, it appears to be now well settled that there is nothing in the nature of a lien for taxes, or in the fact that such lien exists in favor of the sovereign taxing power, to prevent the application of the equitable doctrine of subrogation in a case where subrogation would otherwise be proper. (*Camden* v. *Fink Coal & Coke Co.*, 106 W. Va. 312, 145 S. E. 575; 61 A. L. R. 584, and cases cited in note, p. 587.)

It is said that public policy requires that taxes be paid promptly when due or delinquent. Payment thereof by one whose property may be ultimately liable therefor should be encouraged rather than the contrary, and the requirement as to the necessity of payment should not be strictly but liberally construed in order to entitle a lienholder who pays such taxes to the benefits of subrogation. The principle of subrogation should not be defeated by the mere fact that a lienholder may have paid due or delinquent taxes perhaps too early. (*Whitehead* v. *Wilson Knitting Mills*, 194 N. C. 281, 139 S. E. 456, 58 A. L. R. 674; *Wyoming Building & Loan Assn.* v. *Mills Construction Co.*, 38 Wyo. 515, 269 Pac. 45, 60 A. L. R. 418.)

By the enactment of sections 2206 and 2207, supra, our legislature has enabled persons to secure the lien of the state and county for delinquent taxes and to hasten their receipt by the public treasury. Manifestly, the legislature had no misgivings as to the propriety of permitting citizens to enjoy, in certain circumstances, the lien of the state and county as security for delinquent taxes on real estate.

In many states, if the holder of a second mortgage purchase the property at tax sale or secure an assignment of the tax sale certificate, he may not then assert his tax title as against the holder of the first mortgage. (See extended note in L. R. A. 1917D, 552.) In jurisdictions where this rule obtains it is held in the circumstances noted, that the second mortgage is subrogated to the lien of the taxes and may assert it as a prior lien against the holder of a first mortgage. (*Riley* v. *Bank of Commerce*, (N. M.) 23 Pac. (2d) 362; *Connecticut Mut. L. Ins. Co.* v. *Bulte*, 45 Mich. 113, 7 N. W. 707; *Norton*

v. *Metropolitan L. Ins. Co.*, 74 Minn. 484, 77 N. W. 298, 539; *Fiacre* v. *Chapman*, 32 N. J. Eq. 463; 2 Jones on Mortgages, 8th ed., p. 577.)

By the provisions of section 8238, Revised Codes 1921, it is declared: "Every person, having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due,. and before his right of redemption is foreclosed." Section 8239 provides: "One who has a lien inferior to another, upon the same property, has a right: 1. To redeem the property in the same manner as its owner might from the superior lien; and, 2. To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests, upon satisfying the claim secured thereby."

Plaintiff was the owner of an inferior lien—namely, a third mortgage—to the lien of defendant's first mortgage. The state and county were the owners of a lien paramount to both mortgages. Clearly subdivision 2 of section 8239, supra, is applicable and affords plaintiff the right to be subrogated to the tax lien.

Our attention is invited to the case of *Anderson* v. *McClenathan*, 62 Mont. 387, 205 Pac. 230, wherein this court held that a remainderman could not maintain an action against the personal representative of the life tenant for taxes imposed during the life estate, it being conceded that the life tenant was in duty bound to pay such taxes, paid by the remainderman after due but before the taxes were delinquent, upon the ground that such a payment was voluntary. No question of subrogation was there discussed, nor could it be considered for the reason that, the life estate being terminated, any lien to which the remainderman might be subrogated would be against his own property. The plaintiff in that action could not avail himself of the provisions of section 8239, for the reasons noted. Therein lies the distinction between the Anderson case and the one at bar.

Plaintiff is entitled to be subrogated to the lien of the state and county for the taxes, interest and penalty paid by him, and interest on the sums so paid at the legal rate, as admitted

by the pleadings in this case, whether he proceeds with the foreclosure of his mortgage or not.

It is accordingly ordered that the cause be remanded, with directions to the lower court to allow plaintiff a reasonable time within which to bring in the necessary parties to this action, if they be known or their identity ascertained as the result of reasonable inquiry, and to permit amendments to the pleadings and further proceedings in conformity with the views herein expressed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied February 24, 1934.