ANER SPERRY *vs.* MARY T. BUTLER, TRUSTEE, ET AL.

First Judicial District, Hartford, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Claims of law not raised in the trial court will not be considered by this court on appeal.
Judgment for possession of mortgaged premises before the expiration of the law-day may be lawfully rendered in favor of the mortgagee.
Subrogation is an equitable, not a legal, doctrine, to be applied only

according to the dictates of justice, good conscience, and considerations of public policy.

In the absence of legislation expressly or impliedly authorizing it, private persons ought not to be subrogated, by judicial intervention, to the rights of a municipality in the foreclosure of tax liens existing in its favor. Such foreclosure is part of the governmental machinery provided by law for securing public revenues, and its operation should be confined to responsible, public officers.

Whether legislation imposing an obligation upon one to pay a tax due from another would impliedly authorize such subrogation, quære.

Chapter 1 of the Public Acts of 1899 (Rev. 1902, § 4122) provides that insurance premiums, taxes, and assessments, paid by the mortgagee of the property for protecting his interest therein, shall be deemed to be a part of the mortgage debt. Held that such payments did not furnish a foundation for foreclosure, apart from or independently of the mortgage debt, and that until there was a right to foreclose for the mortgage debt itself, there could be none for its incidents.

Argued October 14th, 1902—decided January 7th, 1903.

ACTION of foreclosure, brought to the City Court of Hartford, where successive demurrers to the complaint and amended complaint were overruled, and the case was tried to the court, *Morse, J.;* facts found and judgment rendered for possession only, and appeal by each party for alleged errors in the rulings and judgment of the court. *No error.*

The plaintiff brought his action in ordinary form for the foreclosure of a second mortgage, which, as also the note secured thereby, he held by assignment and indorsement, respectively. The complaint also recited that certain taxes upon the mortgaged premises for which liens had been duly filed, and also certain municipal assessments for which liens as provided by law had been filed, or for which the right of lien existed, being overdue and unpaid and the defendants having refused to pay the same, had been paid by the plaintiff, who was compelled to pay them to protect his interests in the mortgaged premises. The complaint prayed for both a foreclosure of the mortgage and possession of the mortgaged premises. The complaint, as originally filed and as amended, was demurred to and the demurrers were overruled. Upon the trial the court found, upon the admission of the plaintiff,

.that nothing was due at the commencement of the action upon either the principal or interest of the mortgage debt. The plaintiff thereupon waived·all claim for a foreclosure therefor, but claimed (1) that by subrogation he was entitled to a foreclosure of the title to said premises under said tax and assessment liens, together with possession of said premises ; (2) that he was entitled to possession of the mortgaged premises by virtue of his mortgage title, if foreclosure of. title were denied.

The court denied the claim for a foreclosure, and rendered judgment for possession only.  The note secured by the mortgage was one payable ten years from date, " or earlier if convenient to the grantor in whole or in part," with interest payable semi-annually.  The mortgage was conditioned upon the payment of said note.

*Sylvester Barbour*, for the appellant (plaintiff).

*Andrew J. Broughel, Jr.*, for the appellants (defendants).

PRENTICE, J.   The controlling questions of law, concerning which the parties are at issue upon their appeals, are two : First as to the right of the plaintiff to have a judgment for possession, and second, as to his right to have a judgment of foreclosure of the tax and assessment liens.

With respect to the first question, which is the one raised by the defendants' appeal, it is to be observed that the claim made in the trial court, upon this branch of the case, was that a judgment for possession of mortgaged premises before the expiration of the law-day·could not be lawfully rendered in favor of a mortgagee.

The question argued before us, as to the plaintiff's right to have judgment for possession only, and independent of any other relief, was not made.   It appears in the reasons of appeal for the first time in the record.   This question is not, therefore, properly before us for decision.

The claim in the form it was presented to the court below was not well made.   *Rockwell* v. *Bradley*, 2 Conn. 1; *Wake-*

*man* v. *Banks*, ibid. 445; *New Haven Savings Bank* v. *Mc-Partlan*, 40 id. 90. It is not strengthened by a limitation of it to second mortgagees, as is done in one of the reasons of appeal. *Savage* v. *Dooley*, 28 Conn. 411.

The plaintiff, in support of his contention in his appeal, invokes the doctrine of subrogation. He says that by his payment of taxes and assessments he has become subrogated to the rights of the municipalities to which payments were made, under the liens which existed in their favor. Let us first inquire to what extent, if at all, such subrogation may be had in favor of a private individual.

Tax liens are a part of the governmental machinery provided by law to secure public revenues. The operation of this machinery of taxation is placed in the hands of public officials. The powers conferred upon them are in many respects arbitrary and summary. They find their justification in the necessities of government, and their palliation in the fact that public officials alone are intrusted with their exercise, and that they can be used to subserve public ends alone. These powers are oftentimes such as ought not to be at the command of private individuals, and subject to their caprice, greed, or malevolence. Take, for example, the powers which exist in favor of the public in the matter of the collection of taxes. The public representative may immediately, after demand, summarily levy upon estate or body. Clearly these are powers which individual ought not to have over individual. They were devised and intended for the welfare of the organized public, and not to be passed about from man to man.

The plaintiff asks to be subrogated to the public right to foreclose. The city of Hartford and the school district, to which the taxes in question were paid, were vested with other rights to secure the collection of the taxes due them. By the same arguments advanced to justify the right now contended for, the right of the plaintiff, to avail himself of any of the summary means at the command of the city or school district to enforce the payment of their claims, would be supported. Subrogation, to quote the contention of the plaintiff's brief,

o

is " the substitution of one person in the place of another. . . . The substitute is put in all respects in the place of the party to whose rights he is subrogated." The argument goes to the full extent of full and complete substitution, to wit, the vesting in the substitute of all the powers of the party whose place is taken.

This argument overlooks the important fact that subrogation is an equitable and not a legal right. Its foundation, it is said, is in equity and benevolence. *Wallace's Estate*, 59 Pa. St. 401. It is a doctrine, therefore, which will be applied or not according to the dictates of equity and good conscience, and considerations of public policy. When the case is one of the subrogation of the individual to public rights and remedies, the situation assumes an aspect not presented where the substitution relates to private rights. Questions of public policy, questions as to the propriety of turning over the governmental machinery to individuals and conferring upon them the powers of the organized public, at once arise. The inquiry becomes one not of legislative power to provide for a complete or partial substitution, but one of judicial discretion in the administration of equitable principles under equitable considerations. So it is that courts ought to hesitate, and have hesitated, to apply the doctrine of subrogation to cases where the substitution would result in conferring upon individuals rights and powers peculiarly designed for and adapted to public purposes and as a part of the governmental machinery, without statutory sanction express or implied. *Hinchman* v. *Morris*, 29 West Va. 673; *Griffing* v. *Pintard*, 25 Miss. 173; *Mercantile Trust Co.* v. *Hart*, 76 Fed. Rep. 673; *Wallace's Estate*, 59 Pa. St. 401.

The power of taxation is one of the drastic powers exercised by governmental bodies. Its machinery is skillfully designed to accomplish the desired results most certainly and effectually. It is adapted to its uses, but not to private, unrestrained exercise. Therefore it is that, in the absence of legislation expressly or by reasonable implication authorizing the substitution of the individual for the community, the powers specially created as incidental to the exercise of

the public right of taxation ought not to become delegated to private persons by judicial intervention, unless, indeed, it be in rare and extreme cases.

It is quite possible that this implication of authority might properly be raised from a direct statutory obligation to pay a tax due from another. *Bibbins* v. *Clark*, 90 Ia. 230, 29 L. R. A. 278, 282 (note). Such obligation was present in the case of *Hart* v. *Tiernan*, 59 Conn. 521, 525, and doubtless was a prominent factor in the conclusion of the court. The situation is a very different one where, as in this case, the only thing inducing the payment was private pecuniary advantage.

The cases of *Hart* v. *Tiernan*, referred to, and of *Meyer* v. *Burritt*, 60 Conn. 117, and *Cole* v. *Rice*, 74 id. 680, are in perfect harmony with this doctrine. All of these cases arose under the peculiar provisions of the charter of the city of Waterbury. The first named case is the pertinent and controlling one of the three, as related to the subject now under discussion. The question discussed and decided was practically one of charter construction, and not of equitable subrogation alone. The decision of the court was to the effect that, as the charter compelled the collector to assume and pay all taxes, whether collected or not, and expressly gave to him upon such payment the right to all delinquent taxes and provided that he might at any time within six years collect them by proceedings in his own name, it must be held that there went to him with the taxes all the securities and remedies against the delinquents held by the community to which they were thus compulsorily paid by him. This was held as a necessary implication from the charter provisions.

These same considerations apply in principle, although the reasons therefor may be less forceful, to the liens for municipal assessments.

These conclusions render it unnecessary to inquire whether the plaintiff's payments of taxes and assessments were made under such circumstances as to justify in any event the application of the doctrine of subrogation.

The claims made by the plaintiff in the trial court, his reasons of appeal, and his brief and argument, rely upon the

doctrine of subrogation, alone, for his right to a foreclosure for the amount of his payments for taxes and assessments. No reliance is anywhere placed upon the provisions of Chap. 1 of the Public Acts of 1899 (Rev. 1902, § 4122), which provides that "premiums of insurance, taxes, and assessments paid by the mortgagee of any property, for protecting his interest therein, shall be deemed to be a part of the mortgage debt, and shall be refunded to him before he can be required to release his title." This action of the plaintiff would render it unnecessary to consider this possible aspect of the case. We, however, feel constrained to say that his failure to make a claim under the statute, which the brief makes apparent was deliberate, was one justified by a sound judgment. Payments so made do not furnish a foundation for a foreclosure, independently of the mortgage debt. The statute makes them a part of the debt, and until there is some right of foreclosure for the debt there can be none for its incidents.

The plaintiff complains that the views here expressed would work a peculiar hardship to him. If so, he must remember that he exercised the privileges of a free agent when he purchased a mortgage note payable ten years from date, and the security therefor, in which was no provision for the payment by the mortgagor of the taxes and assessments as a part of the condition.

There is no error.

In this opinion the others judges concurred.