C. W. STALLINGS, JR., Plaintiff and Respondent, v. MYRL
ERWIN, HAZEL A. HUSTED et al., Defendants and
Appellants.

No. 11022.

Submitted September 16, 1966. Decided October 19, 1966.

419 P.2d 480.

228

Frank E. Blair (argued), Virginia City, for appellants.

McFadden & Davis, Frank M. Davis (argued), Dillon, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment quieting title to certain property located in Dillon, Montana, entered in favor of the plaintiff, respondent here.

Frank Husted, the deceased husband of appellant Hazel Husted, held a mortgage on Lot 10 of Block 4 of the original townsite of Dillon, Beaverhead County. The mortgage secured a promissory note given by Myrl Erwin, the owner of the property. Upon the death of Frank Husted, appellant succeeded to her husband's interest in the mortgage. The mortgagor Myrl Erwin failed to pay real property taxes and the treasurer of Beaverhead County conducted a sale to secure payment thereof. Since there was no purchaser at this sale, the tax assessments were struck off to the county pursuant to section 84-4124, R.C.M. 1947. The certificates of tax sale were then purchased from the county by the mortgagee Hazel Husted for $1,484.25.

Subsequent to the purchase of the tax certificates, Hazel Husted foreclosed the mortgage the mortgagor being in default. At the sheriff's sale it was announced that the property was offered subject to a lien for taxes held by Hazel Husted

under the tax certificates. The property was purchased by the respondent Stallings, who brought this quiet title action. The district court ruled that the foreclosure sale cut off any lien asserted by the mortgagee for taxes paid by her; and, accordingly entered judgment quieting title in the plaintiff.

The issue before this court is whether a mortgagee who pays taxes on the mortgaged property prior to foreclosure acquires a distinct and separate lien on the property which survives the foreclosure sale. Although this court has never ruled on the question, the great weight of authority from other jurisdictions is that the tax lien may not be asserted in an independent action after foreclosure. "The general rule may be stated to be that since the amount paid for taxes, together with the amount due on the mortgage, constitutes only a single and indivisible demand, existing only by virtue of the mortgage, and being collateral and subordinate thereto, it cannot be separated, and collected in a separate action." 37 Am.Jur., Mortgages, § 528, p. 31. "* * * The mortgagee, it is held, must combine his tax claims with a suit to foreclose for the mortgage debt. True, he will be allowed to add tax disbursements to the amount of the debt up to the entry of a foreclosure decree, and the courts will be liberal in permitting amendments to that effect. But all tax claims must be vindicated in the foreclosure process itself, and no independent suits will lie, whether prior to foreclosure or afterwards. This rule forbids any sort of independent suit, regardless whether the mortgagee seeks to enforce the tax lien through subrogation, or sues merely in quasi contract." 1 Glenn on Mortgages 553. "The general rule may be stated to be that, as the amount paid for taxes, together with the amount due on the mortgage, constitutes but a single and indivisible demand, existing only by virtue of the mortgage, and being collateral and subordinate thereto, it cannot be separated and collected in a separate action; therefore, a mortgagee who has paid taxes on the encumbered property,

230

either before or after the foreclosure of his mortgage, to protect his interest therein, cannot, after the foreclosure of the mortgage, maintain an independent action against the mortgagor to recover the amount so paid, since such payment does not create a lien or liability apart from that of the mortgage, and since a satisfaction of the latter cancels and terminates all liability on the part of the mortgagor to reimburse the mortgagee therefor." 84 A.L.R. 1387. Northern Finance Corp. v. Byrnes, (C.C.A.8th 1925) 5 F.2d 11; San Mateo County Bank v. Dupret, 124 Cal.App. 395, 12 P.2d 669; Gilmour v. First Nat. Bank, 21 Colo.App. 301, 121 P. 767; Sperry v. Butler, 75 Conn. 369, 53 A. 899; Semans v. Harvey, 52 Ind. 331; Dickinson v. White, 64 Iowa 708, 21 N.W. 153; Walton v. Bagley, 47 Mich. 385, 11 N.W. 209; Horrigan v. Wellmuth, 77 Mo. 542.

The majority rule, which we here adopt, has been supported on three basic grounds. Some jurisdictions have adopted statutes which specifically require a mortgagee paying taxes to include the amount of such taxes in the mortgage debt itself. Gorham v. National Life Ins. Co., 62 Minn. 327, 64 N.W. 906. Montana does not have such a statute. Many other decisions are based on covenants in the mortgage instrument which permit the mortgagee to pay taxes and collect the same upon foreclosure. Vincent v. Moore, 51 Mich 618, 17 N.W. 81. It is important to note that the mortgage foreclosed by Hazel Husted contained such covenants. And finally, a number of decisions hold that as a matter of public policy, and in the absence of specific statutes or covenants, taxes paid by the mortgagee are accretions to the one debt secured by the mortgage and therefore may not be asserted as an independent lien. Praetorians v. State, Tex.Civ.App., 53 S. W.2d 334.

R.C.M. 1947, § 93-6001, provides: "There is but one action for the recovery of debt, or the enforcement of any right secured by mortgage upon real estate, which action must be in accordance with the provisions of this chapter." The pur-

pose of this section is to require the mortgagee to bring one foreclosure action to enforce "any right" protected by the mortgage. If the price bid in at foreclosure is insufficient to reimburse the mortgagee, a deficiency judgment may be entered against the mortgagor for the balance due and may be enforced by a lien upon the real property of the *mortgagor* only.

California Code of Civil Procedure, § 726, is identical to section 93-6001, and our statute was adopted from the California Code. California courts, in construing their § 726, have consistently denied a mortgagee a separate action based on a tax lien. San Macto County Bank v. Dupret, supra; Stafford v. Russell, 117 Cal.App.2d 326, 255 P.2d 814; Johns v. Moore, 168 Cal.App.2d 709, 336 P.2d 579.

Tax certificates may be purchased from the county to protect a security interest in property or as an investment. Appellant here maintains that since the certificates were held as an investment, she was subrogated to the county's tax lien on the property. Under this view, the tax lien would exist apart from the debt secured by the mortgage and could be enforced in a separate action. We cannot accept this analysis. In the case of McKenzie v. Evans, 96 Mont. 1, 13, 29 P.2d 657, this court said: "Although there is some doubt cast upon the proposition in early cases, it appears to be now well settled that there is nothing in the nature of a lien for taxes, or in the fact that such lien exists in favor of the sovereign taxing power, to prevent the application of the equitable doctrine of subrogation in a case where subrogation would otherwise be proper. \* \* \*

"\* \* \* Manifestly, the Legislature had no misgivings as to the propriety of permitting citizens to enjoy, *in certain circumstances*, the lien of the state and county as security for delinquent taxes on real estate." (Emphasis ours.)

The McKenzie case involved a junior mortgagee who paid taxes. The issue was whether the lien for taxes would have

232

priority over the senior mortgage. The doctrine of subrogation was applied to permit the junior mortgagee to have priority over the senior mortgagee for the amount of taxes paid only. We feel that the circumstances now before the court present fundamentally different policy issues and that subrogation should not here be permitted.

Appellant's position is most strongly supported by section 84-4130, R.C.M. 1947, which provides: "On filing the certificate with the county clerk, the lien of the state vests in the purchaser, and is only divested by the payment to him or to the county treasurer for his use of the purchase money and one percent additional for each month that elapses from the date of the sale until redeemed." Taken alone, this section does suggest that a mortgagee could hold a tax lien independent of the mortgage debt, and that such lien could be extinguished only by paying the mortgagee the amount given for the certificates plus interest. But, we are constrained to consider the entire statutory process created for the foreclosure of mortgage debts. The clear intent of section 93-6001, is to give a mortgagee a single remedy to enforce a single right. A contrary policy, not favored by the law, would permit a multiplicity of actions, either against the mortgagor or against the property. Hazel Husted had adequate protection for reimbursement of taxes she paid under section 93-6001, and under the covenants of the mortgage itself. Referring to taxes paid by the mortgagee, the mortgage held by Hazel Husted provided that, "* * * sums so paid shall be repayable in the same kind of money or currency in which the same shall have been paid and shall bear interest at the rate of six percent per annum until paid, *and shall be considered as secured by these presents,* and be a lien upon the said premises and *shall be deducted from the proceeds of the sale thereof* above mentioned, with interest as herein provided." (Emphasis supplied.) The clear intent of the parties to this mortgage was to permit the mortgagee to pay taxes to protect

her security interest and to consider such payments part of the mortgage debt itself.

Hazel Husted purchased the tax certificates to protect her interest in the property and cannot be treated as a mere investor in tax certificates. The mortgage itself entitled the mortgagee to substantial interest on amounts paid for taxes, which makes it more difficult for us to view the appellant as a disinterested investor in tax certificates, relying solely on section 84-4130, for reimbursement.

Since the appellant was sufficiently protected by the mortgage instrument and section 93-6001, there is no lack of equity in denying her the additional remedy sought in this appeal. A mortgagee should not be permitted to unduly burden property with successive suits to secure rights arising from a single mortgage. The appellant made no effort to obtain a deficiency judgment for the taxes and actually permitted the mortgagor Myrl Erwin to retain $300 excess bid in over the amount of the promissory note.

There is no evidence or allegation that respondent Stallings took advantage of the tax lien which appellant claimed by submitting an inequitable or unreasonably low bid for the property. Even though such a reduction in bids might result, it would be irrelevant to the statutory policy which we are here defining.

Courts throughout the United States are nearly unanimous in requiring a mortgagee to satisfy all claims arising out of the mortgage in a single foreclosure action. We feel that the district court did not err in denying the appellant's claim based on an independent lien for taxes.

The judgment is affirmed.

MR. JUSTICES JOHN C. HARRISON and ADAIR, and DISTRICT JUDGE NAT ALLEN sitting in place of MR. JUSTICE DOYLE, concur.

MR. CHIEF JUSTICE JAMES T. HARRISON (specially concurring):

In this cause it had seemed to me that there should be a distinction between the position of a mortgagee holding an assignment of a certificate of tax sale and the position of a mortgagee who merely paid the taxes.

In the first instance there exists a lien entirely independent of the mortgage because if the holder of the assignment was not a mortgagee a means is provided whereby the lien can be enforced against the land. In the second instance, however, there is no lien independent of the mortgage because payment of the taxes discharges the tax lien against the land, and it is only by virtue of the provisions of the mortgage permitting the mortgagee to pay taxes and recover the amount so paid in the foreclosure action that reimbursement may be achieved.

My associates disagree with my theories and it appears they have the weight of authority sustaining their position, and I find the precedents for my views extremely meager and unsatisfactory.

In these circumstances I should and do concur in the foregoing opinion.